Eugla SPEARS, Plaintiff,

v.

Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant.

No. 83 Civ. 6128(RJW).

United States District Court, S.D. New York.

Nov. 8, 1985.

Carolyn Curtis, Thomas M. O'Brien, New York City, for plaintiff; Community Law Offices, New York City, David W. Wechsler, of counsel.

Rudolph W. Giuliani, U.S. Atty., New York City, for defendant; Annette H. Blum, Michael Noorigian, Mary Anne Wirth, of counsel.

ROBERT J. WARD, District Judge.

This action is brought pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act") as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of a final decision by the Secretary of Health and Human Services (the "Secretary"), denying plaintiff's application for supplemental security income based on disability ("SSI") (hereinafter "disability benefits"). The Secretary held that plaintiff was not under a "disability" within the meaning of the Act during the period in question because plaintiff's impairments were not "severe" as that term is defined in the Act.

On February 27, 1984, plaintiff moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. Subsequently, on April 25, 1984, defendant cross-moved for judgment on the pleadings pursuant to Rule 12(c). On September 14, 1984, defendant filed a superseding motion for an order of this Court remanding the case to the Social Security Administration in accordance with the district court's order in *Dixon v. Heckler*, 83 Civ. 7001(MEL) (S.D. N.Y. July 25, 1984). For the reasons hereinafter stated, plaintiff's motion for judgment on the pleadings is granted insofar as it seeks a remand, defendant's motion for a remand pursuant to *Dixon* also is granted, and defendant's original cross-motion for judgment on the pleadings is denied as moot.

## BACKGROUND

Plaintiff Eugla Spears is thirty-eight years old. She was born in South Carolina,

where she attended school through the ninth grade and did farm work before moving to New York City in the late 1960s. For approximately five years, plaintiff worked on an assembly line making pens and pencils, but stopped working in 1973 because of repeated fainting spells and severe nosebleeds. (T. 44, 200) She has been unemployed since that time. Plaintiff has three children. Her sole means of support is public assistance.

Plaintiff applied for disability benefits on December 14, 1981. After her application was denied initially and upon reconsideration, plaintiff requested a hearing on the Secretary's reconsidered determination. That request was deemed to have been untimely made and was dismissed by order of an administrative law judge dated August 2, 1982. On review of this order of dismissal, the Appeals Council concluded that plaintiff's request for a hearing had indeed been made in a timely fashion. The Appeals Council therefore remanded the case for a hearing, which was scheduled for November 4, 1982.

In late October, plaintiff secured the assistance of an attorney from the Legal Aid Society ("Legal Aid") to represent her at the hearing. Shortly thereafter, attorneys for Legal Aid went on strike. A supervising attorney from Legal Aid contacted Helen C. Anyel, the Administrative Law Judge scheduled to conduct the hearing on November 4, 1982 (the "ALJ"), to request a three-week adjournment of the hearing date so that plaintiff could seek other legal assistance. This request was denied. On the day of the hearing, the Legal Aid supervisor appeared with plaintiff and plaintiff's companion, Rosemarie Youngblood, and again requested an adjournment so that plaintiff could obtain relevant medical records and attempt to secure new counsel. The ALJ refused to adjourn the hearing, and informed plaintiff that if she did not

proceed at that time without an attorney, her case would be dismissed. (Tr. 33) Plaintiff elected to proceed with the hearing. The ALJ thereupon took testimony from plaintiff and from Ms. Youngblood. At Youngblood's suggestion, the ALJ agreed to procure and consider additional medical records before rendering a decision in the case.

In a written decision issued on February 25, 1983, the ALJ determined that plaintiff was not eligible for disability benefits because plaintiff was not disabled within the meaning of the Social Security Act. Specifically, the ALJ found that plaintiff had a "history of anemia, history of hypertension, history of veneral [sic] disease and anxiety," and that plaintiff suffered from "some pain [,] lightheadedness, and discomfort." (Tr. 16) Nevertheless, the ALJ concluded that "such pain and heavy menustral [sic] flow are not severe, constant of [sic] incapacitating and does not interfer [sic] with [plaintiff's] ability to perform work related duties." *Id.* Accordingly, the ALJ determined that plaintiff did not suffer from a severe impairment and therefore was not under a "disability" as defined in the Act.

Plaintiff requested review of the ALJ's decisions.[1] This request was denied by the Appeals Council on April 27, 1983. Plaintiff's further request for a new administrative hearing was likewise denied by the Appeals Council in a letter dated July 15, 1983. Thus, the ALJ's decision of February 25, 1983 stands as the final decision of the Secretary with respect to plaintiff's December 14, 1981 application for disability benefits.

On July 27, 1983, plaintiff again applied for disability benefits. This application was granted by the Secretary without a hearing, and plaintiff was awarded benefits for the period beginning July 27, 1983.[2] In

---

1. In the interim between the hearing on November 4, 1982, and the rendering of the ALJ's decision on February 25, 1983, the Legal Aid Society's labor dispute ended. Plaintiff therefore was represented by a Legal Aid attorney on her appeal of the ALJ's decision to the Secretary, and is represented by counsel in the action before this Court.

2. *See* Plaintiff's Memorandum in Opposition to Defendant's Cross-Motion for Judgment on the Pleadings ("Plaintiff's Opposition Memoran-

the instant action, then, the relief plaintiff seeks is an award of retroactive disability benefits limited to the period between December 14, 1981 and July 27, 1983.

## DISCUSSION

The legal principles that govern the Court's decision on the instant motions are well settled. "Disability" is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[3] The mere presence of an impairment is not disabling within the meaning of the Act. Rather, a person may be determined to be under a disability only if his or her impairment is of such severity that the claimant is not only unable to do his or her previous work, but cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The initial burden of proving disability is on the claimant. 42 U.S.C. § 423(d)(5); *see Schauer v. Schweiker,* 675 F.2d 55 (2d Cir. 1982); *Carter v. Schweiker,* 649 F.2d 937, 940 (2d Cir.1981). The claimant satisfies this burden by making out a *prima facie* case, that is, by showing that his or her impairment prevents return to his or her prior employment. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). The burden then shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work that exists in the national economy and that the claimant could perform. *Id.*

In reaching a conclusion as to disability, both objective and subjective factors are to be considered. These include objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience. *Rivera v. Harris, supra,* 623 F.2d at 216; *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978). These factors need not be given equal weight. The expert opinion of the claimant's treating physician, for example, is entitled to particular weight, and "in the absence of substantial contradictory evidence, the opinion of the claimant's treating physician is binding on the Secretary." *Hankerson v. Harris, supra,* 636 F.2d at 896; *see also Eiden v. Secretary of HEW,* 616 F.2d 63, 64 (2d Cir.1980); *Alvarado v. Califano,* 605 F.2d 34, 35 (2d Cir.1979).

The Secretary has the duty of making the determination of disability under the principles set forth above. It is not the function of this Court, which sits in the present context as a reviewing court, to determine *de novo* whether the claimant is disabled. Assuming the Secretary has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence. If they are so supported, they are conclusive. 42 U.S.C. § 405(g). *See Rivera v. Harris, supra,* 623 F.2d at

---

dum"), Exhibit A at 76–77 (SSI Payment Decision dated Dec. 2, 1983). The Secretary's determination that plaintiff was entitled to disability benefits as of July 27, 1983 was based on a finding that plaintiff is mentally retarded. She was diagnosed to have an I.Q. of 57. *See id.* at 58 (SSA Disability Determination and Transmittal dated Nov. 4, 1983). This intelligence test score brings plaintiff squarely within the definition of mental retardation in Appendix 1 of the SSA regulations. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1 at 322. Any impairment that meets or equals one of the listed impairments in Appendix 1 is treated by the Secretary as a severe impairment, and supports a finding of disability without consideration of the claim-

ant's age, education and work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

3. *See also* 42 U.S.C. § 1382c(a)(3)(A), which defines "disability" for purposes of SSI eligibility. This definition is virtually identical to that in 42 U.S.C. § 423(d)(1)(A). The standard for judicial review is also identical in both SSI and disability benefit cases under 42 U.S.C. § 423. *See* 42 U.S.C. § 1383(c)(3). Consequently, "cases under 42 U.S.C. § 423 are cited interchangeably with cases under 42 U.S.C. § 1382c(a)(2)." *Hankerson v. Harris,* 636 F.2d 893, 895 n. 2 (2d Cir.1980). *See also Rivera v. Harris,* 623 F.2d 212, 216 n. 4 (2d Cir.1980).

216; *Bastien v. Califano, supra,* 572 F.2d at 912. However, where evidence has not been properly evaluated because of the application of an erroneous legal standard, the determination of the Secretary may not be upheld. *See Marcus v. Califano,* 615 F.2d 23, 28 (2d Cir.1979). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). *See generally Parker v. Harris, supra,* 626 F.2d at 230–32.

■ Applying these principles to the instant case, the Court concludes that the Secretary's decision denying plaintiff disability benefits must be reversed and remanded. Plaintiff's disability claim was denied by the Secretary through application of the SSA's so-called "severity regulation." Therefore, plaintiff is a member of the plaintiff class in *Dixon v. Heckler,* No. 83 Civ. 7001(MEL) (S.D.N.Y.). Remand of the instant case is appropriate in view of Judge Lasker's decision in *Dixon,* in which he preliminarily enjoined the Secretary's enforcement of the severity regulation and ordered that the Secretary move for or consent to a remand of all disability cases implicating members of the *Dixon* class. In addition, this Court concludes that remand is necessary because the record reveals that the ALJ failed adequately to consider relevant medical evidence, did not provide plaintiff with an adequate hearing, and did not perform her duty affirmatively to develop the record.

*Application of the Severity Regulation*

The Secretary determined that plaintiff was not suffering from a disability under the Act by applying the "severity regulation" promulgated by the SSA. *See* 20 C.F.R. §§ 404.1520 *et seq.,* 416.920 *et seq.* These regulations require the Secretary to evaluate disability claims by employing the following five-step sequence:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). If, at any stage in this five-step process, there is a finding that the claimant is not disabled, the review comes to an end and the Secretary does not inquire further into those factors that remain.

The severity regulation promulgated by the Secretary is already the subject of litigation in another action brought in this district, *Dixon v. Heckler,* No. 83 Civ. 7001(MEL) (S.D.N.Y.). That lawsuit was brought on behalf of a class of disability claimants seeking declaratory and injunctive relief against, *inter alia,* the Secretary's use of the severity regulation to evaluate claims for disability benefits. In a decision dated June 22, 1984, Judge Lasker granted plaintiffs' motion for class certification as well as their motion for preliminary injunctive relief against the Secretary's enforcement of the severity regulation. *Dixon v. Heckler,* 589 F.Supp. 1494 (S.D.N.Y.1984). Subsequently, Judge

Lasker issued an order requiring the Secretary to consent to or move for remand in all cases involving *Dixon* class members. *Dixon v. Heckler*, No. 83 Civ. 7001(MEL) (S.D.N.Y. July 25, 1984).

One of the grounds upon which the *Dixon* court relied in preliminarily enjoining enforcement of the severity regulation was that the regulation conflicted with "longstanding judicial interpretations of the burden of proof which claimants must satisfy in order to establish a prima facie case of disability." 589 F.Supp. at 1505.[4] Another justification advanced in *Dixon* for striking the regulation was that it permitted the Secretary to find that claimants suffered from no disability, *"without* considering whether their impairments, in light of their age, education, and work experience, permit them to perform gainful work." *Id.* at 1502 (emphasis in text). The court in *Dixon* therefore concluded that plaintiffs had proven a likelihood of success on the merits of their claim that the disability evaluation required under the regulation conflicts with the definition of "disability" in the Act itself.[5]

In evaluating plaintiff's claim for disability benefits in the instant case, the Secretary applied the severity regulation that is the subject of the preliminary injunction issued in *Dixon v. Heckler, supra.* (Tr. 16–17) Therefore, pursuant to Judge Lasker's order of July 25, 1984 in *Dixon,* the Secretary moves to remand the instant case for further administrative proceedings. Plaintiff concedes that she is a member of the *Dixon* class, but nonetheless opposes a

remand pursuant to *Dixon* on the ground that such a remand would serve no purpose. Having reviewed the record of the administrative proceedings below, the Court concludes that remand of the case pursuant to *Dixon* is appropriate. The Secretary's denial of disability benefits to plaintiff in the instant case was based upon a finding that plaintiff was not disabled under the severity regulation. (Tr. 16–17) Moreover, the Secretary's evaluation of plaintiff's claim under the regulation raises some of the very legal issues now being litigated in the *Dixon* class action.

In the proceedings below, the Secretary determined, under the first step of the severity regulation, that plaintiff had not engaged in substantial gainful activity since December 14, 1981, and therefore the Secretary proceeded to step two, under which she examined the severity of plaintiff's impairments. At this second stage of the analysis, the Secretary considered medical evidence of plaintiff's impairments, including reports from neighborhood health clinics at which plaintiff had received treatment and the reports of three consultative physicians. While acknowledging that plaintiff suffered from several impairments, *see supra* at 209, the Secretary concluded that she did not suffer from any *severe* impairment, and thus was not disabled under the Act. (Tr. 16)

Because the Secretary did not proceed beyond step two of the severity regulation, she did not explicitly consider whether plaintiff was capable of performing work she had done in the past, nor did she con-

---

**4.** Under these precedents, a claimant makes out a *prima facie* case of disability by showing that he or she is unable to return to his or her past employment because of one or more impairments. The burden then shifts to the Secretary to prove that there is other substantial gainful activity in the national economy that plaintiff can perform. *See supra* at 210. In applying the severity regulation, however, the Secretary would not reach the issue of whether the claimant could perform his or her prior work unless the claimant had first established that he or she was suffering from a "severe impairment" based upon medical factors alone. *See supra* at 211.

**5.** The Act provides in relevant part that

an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, *considering his age, education, and work experience,* engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A) (emphasis added); *see also* 42 U.S.C. § 1382c(a)(3)(B).

sider the effect of plaintiff's age, education, past work experience and residual functional capacity on plaintiff's ability to perform other gainful work. Under the preliminary ruling of the district court in *Dixon,* the Secretary's failure to consider plaintiff's ability to perform her past work would constitute the application of an erroneous burden of proof. *See* 589 F.Supp. at 1505–06. In addition, the court in *Dixon* held on a preliminary basis that the Secretary's failure to consider what types of work a claimant could do, given her impairments, age and background, would be erroneous as a matter of law. *See id.* at 1502. It is therefore appropriate for the Secretary on remand of this case to reconsider plaintiff's claim for disability benefits in light of the analysis applied by the *Dixon* court to the Secretary's application of the severity regulation.

In reconsidering plaintiff's disability claim under *Dixon,* the Secretary should make certain explicit findings. First, she should determine whether, during the period in question, plaintiff was capable of returning to her former job. For the reasons already discussed, the Secretary did not reach that issue. However, there is ample evidence in the record from which the Secretary could conclude that plaintiff could not perform her past work-related tasks. Plaintiff's former job as an assembly-line worker in a pen and pencil factory required her to stand eight hours a day, and to bend and reach occasionally. (Tr. 141) Plaintiff testified at the hearing that she was required to stop working at the factory because of her "fall[ing] out on the job." (Tr. 44) Her testimony that she continues to suffer from repeated episodes of "falling out" or fainting was not contradicted by the ALJ and is corroborated elsewhere in the record.

The ALJ herself found that plaintiff has a history of anemia and "light headedness." (Tr. 16) This finding is substantiated by the report of Dr. Roger Rahtz, one of the consultative physicians who examined plaintiff. Dr. Rahtz diagnosed plaintiff to be suffering from, among other things, anemia and a bleeding disorder of un-

certain origin. (Tr. 201). Based on this diagnosis, Rahtz concluded that plaintiff would have difficulty performing household tasks such as standing over a stove, and would require assistance in traveling from her house because of her tendency to fall down. *Id.* Consistent with Dr. Rahtz's evaluation, plaintiff's companion, Rosemarie Youngblood, testified before the ALJ that plaintiff's tendency to faint had been a "big problem." (Tr. 52) As a result, Youngblood stated, she "usually [did] most of the things for her." (Tr. 44) The administrative record itself includes the report of an SSA employee who witnessed plaintiff faint shortly after an interview at SSA offices in February 1982. (Tr. 112) Thus, in view of the uncontradicted evidence already in the record of plaintiff's weak physical condition and tendency to faint, the Secretary could justifiably conclude that plaintiff could not have returned to her former job on an assembly line, which would have required her to stand for considerable periods of time.

Assuming that the Secretary makes such a finding on remand, she must then determine whether, during the relevant period, there was other substantial gainful activity in the national economy that plaintiff could have performed. *See Parker v. Harris, supra,* 626 F.2d at 231; *see also Mimms v. Heckler,* 750 F.2d 180, 185 (2nd Cir.1984). As previously noted, the Secretary made no finding as to what work plaintiff could perform given her acknowledged impairments, her age, and educational and vocational background. Rather, the ALJ asserted by way of conclusion that, "[t]aking the claimant's impairments in the singly [sic] or in the aggregate," they did not "significantly limit her ability to perform basic work-related functions." (Tr. 16)

Such a conclusory finding does not fulfill the Secretary's obligation to "show that there exists alternative substantial gainful work in the national economy which the claimant could perform, considering [her] physical capability, age, education, experience and training." *Mimms v. Heckler, supra,* slip op. at 636. *Accord Dixon v.*

*Heckler, supra,* 589 F.Supp. at 1508.[6] On remand, therefore, the Secretary shall give explicit consideration *both* to the combined effect of plaintiff's physical and emotional impairments on her ability to work, *and* to the impact of plaintiff's age, education and work history on the types of jobs plaintiff could have performed during the period in question. As indicated below, the Secretary must give particular consideration to relevant medical evidence already in the record. In addition, the Secretary may take and consider other evidence of the nature of plaintiff's averred impairments. In particular, she should consider the relevance of her subsequent finding of disability (based upon a diagnosis of mental retardation) to plaintiff's earlier claim for disability benefits now before this Court.[7]

### *Failure to Consider Relevant Medical Evidence*

Apart from the appropriateness of remanding the instant case for reconsideration under *Dixon,* the Court finds that remand is necessary because the record reveals that the ALJ either overlooked or ignored relevant medical evidence in assessing the nature and severity of plaintiff's impairments.

#### 1. Anemia and Bleeding Disorder

In her decision, the ALJ acknowledged that plaintiff suffered from anemia and experienced "heavy menustral [sic] flow." (Tr. 16) Based on her review of the medical evidence, however, the ALJ concluded that these conditions were not severe. The ALJ noted in particular that plaintiff had undergone a D & C[8] in February 1982, and that "since that time her anemia [sic] condition

has stabilized as noted in the reports of the consultative physician Strassberg." *Id.*

The record reflects that plaintiff was admitted to Metropolitan Hospital in February of 1982 upon a diagnosis of dysfunctional bleeding, and that a D & C was performed without complications on February 19, 1982. (Tr. 255) In April of 1982, plaintiff was examined by two consultative physicians, Dr. Roger Rahtz on April 3, 1982 and Dr. Peter Strassberg on April 8, 1982. Both diagnosed plaintiff to be anemic. (Tr. 200–03) However, Dr. Rahtz also found plaintiff to be suffering from a bleeding disorder of uncertain origin. (Tr. 201) The disorder manifested itself, Dr. Rahtz observed, not only in prolonged and heavy menstrual periods, but in severe nosebleeds. Rahtz further surmised that plaintiff's chronic bleeding—as yet inadequately diagnosed—was the cause of plaintiff's other medical complaints, including fatigue, irritability and migraine headaches. (Tr. 200) Rahtz therefore recommended that plaintiff undergo a complete medical evaluation in order to determine the origin of her "chronic bleeding difficulties and associated medical complaints." (Tr. 201)

Neither consultative physician's report explicitly addresses the severity or nonseverity of plaintiff's anemia and related bleeding disorder. At the same time, however, the reports do not support the ALJ's conclusion that plaintiff's anemia had "stabilized" as a result of the D & C performed in February of 1982. To the contrary, the physicians' independent diagnoses of anemia, almost two months after the D & C was performed, suggest that plaintiff's

---

**6.** The Secretary's finding is particularly suspect in view of the opinion expressed by plaintiff's treating psychiatrist, Dr. Molly Niv, that plaintiff was "prone to violence," that her ability to relate to others was "poor," and that her ability to work was "questionable." (Tr. 237) Dr. Niv's is the only direct assessment in the record of plaintiff's ability to work, and as the judgment of plaintiff's treating physician, is entitled to substantial weight. Indeed, the expert opinion of a claimant's treating physician is " 'binding on the fact finder unless contradicted by substantial evidence to the contrary.' " *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984) (quot-

ing *Bastien v. Califano, supra,* 572 F.2d at 912); *see also DeLeon v. Heckler,* 734 F.2d 930, 937 (2d Cir.1984). However, as will be elaborated *infra,* the ALJ made no mention of Dr. Niv's report in her written decision.

**7.** *See supra* note 2; *see also* discussion *infra* at note 9.

**8.** The term refers to a medical procedure involving dilation of the cervix and curettage of the uterus.

anemic condition continued in spite of that operation.

The ALJ's finding that plaintiff's anemia had been controlled as a result of the D & C may have been based on a misreading of Dr. Strassberg's report. Whatever the explanation, the Court has concluded that neither Dr. Strassberg's nor Dr. Rahtz's report supports a finding that plaintiff's anemia had "stabilized" or been "controlled" as a result of the D & C performed in February 1982. On remand, therefore, the Secretary shall consider whether other medical evidence in the record supports such a finding, or whether evidence otherwise establishes that plaintiff's anemia was not severe during the period in question.

The ALJ's finding that, in addition to suffering from anemia, plaintiff experienced heavy menstrual bleeding, is substantiated both in the records of plaintiff's visits to community health centers (Tr. 180, 186, 192), and in the consultative reports of Dr. Steven Rocker and Dr. Roger Rahtz (Tr. 198, 200). However, the ALJ's conclusion that this heavy bleeding was not "severe, constant [or] incapacitating" appears questionable in view of Dr. Rahtz's characterization of plaintiff's bleeding disorder as "chronic," "prolonged" and "severe." (Tr. 200) In dismissing plaintiff's related bleeding difficulties as not severe, the ALJ gave no explicit consideration to the findings of Dr. Rahtz. It is true that, as between the conflicting medical opinions of a claimant's treating physician and that of a consultative examiner, the former is entitled to be given greater weight by the Secretary. *See DeLeon v. Secretary of HHS, supra,* 734 F.2d at 937; *Bluvband v. Heckler, supra,* 730 F.2d at 892. However, where, as here, the opinion of a consultative physician is not contradicted by other medical evidence in the record, and in fact supports rather than undermines plaintiff's claim of disabling impairment, the Secretary may not simply ignore the consultant's diagnosis. In reaching a conclusion as to disability, the Secretary must consider all relevant medical facts, diagnoses and medical opinions in the record. *See Rivera v. Harris, supra,* 623 F.2d at 216. Although an un-

contradicted medical opinion is not binding on the Secretary, she must, if she rejects it, state expressly her reasons for doing so. *Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir.1975); *accord Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir.1981).

The ALJ may have discounted or disregarded Dr. Rahtz's diagnosis because she judged it to be unsupported by clinical or laboratory findings. In summarizing Dr. Rahtz's report, she noted that the physician's diagnosis of "anemia and a bleeding disorder of uncertain ideology [sic]" was "based purely on history." (Tr. 15) However, by now it is well established that a physician's medical assessment need not be supported by " 'objective' clinical or laboratory findings" to merit consideration by the Secretary. *Bluvband v. Heckler, supra,* 730 F.2d at 893; *see also Eiden v. Secretary of HEW, supra,* 616 F.2d at 65; *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir.1975). This rule undoubtedly has greater force when applied to the medical opinion of a claimant's treating physician, who presumably has observed the claimant on a regular basis over a substantial period of time. Nevertheless, the rule should apply as well to the diagnosis of a consultative physician who, within an admittedly short period, has obtained a relatively detailed history of the claimant's medical condition and has had an opportunity to examine the claimant. The consultant's diagnosis, then, can be evaluated against the reports of other physicians who have examined the claimant and against other medical evidence in the record. On remand, therefore, the Secretary shall also reconsider her original determination that plaintiff's bleeding difficulties were not severe, in light both of Dr. Rahtz's report and of the record as a whole. If the Secretary chooses to reject Dr. Rahtz's report in whole or in part, she shall state so explicitly and explain her reasons.

### 2. Intellectual Impairment

The ALJ's written decision also indicates that the ALJ failed to give adequate consideration to Dr. Rahtz's observations con-

cerning plaintiff's intellectual capacity. In his report, Dr. Rahtz noted that he had found plaintiff's attention and ability to respond to questions "somewhat diminished," and that plaintiff's insight and judgment were "similarly impaired." Although Dr. Rahtz found plaintiff's speech to be "relevant and coherent," he observed that her articulation was slurred, as if she had suffered a mild stroke. (Tr. 200–01) In summarizing Dr. Rahtz's report, however, the ALJ made no mention of these observations, and noted only in passing that plaintiff "was found to have without any clinical test below average intelligence." (Tr. 15)

The ALJ's decision does not accurately summarize the consultative physician's medical findings concerning plaintiff's mental capacity. In her decision, the ALJ also minimized the significance of Dr. Rahtz's observations (by noting that plaintiff "was found to have *without any clinical test below average intelligence*" (Tr. 15) (emphasis added)), perhaps assuming that she thereby could avoid considering such evidence in her evaluation of plaintiff's various impairments. It has already been established, however, that in evaluating a claim for disability benefits, the Secretary must consider, among other things, all relevant medical facts, diagnoses and medical opinions in the record. *See Rivera v. Harris, supra,* 623 F.2d at 216. Moreover, a physician's medical opinion need not be supported by clinical tests or other "objective" findings to merit the Secretary's consideration. *Bluvband v. Heckler, supra,* 730 F.2d at 893.

The Court need not determine what weight—if any—the ALJ should have ascribed to Dr. Rahtz's findings of mental impairment, considering his report in isolation from the record as a whole. As will be elaborated below, plaintiff's demeanor at the administrative hearing dramatically corroborated Rahtz's observations. The hearing transcript reflects that plaintiff was confused and disoriented, and answered even simple questions with difficulty. The record further reflects the ALJ's awareness of plaintiff's limitations, for it documents that, after posing a few initial questions to plaintiff, the ALJ directed the bulk of her questions to Rosemarie Youngblood, a neighbor who had accompanied plaintiff to the hearing. *See infra* at 219. In view of her own observation of plaintiff at the time of the administrative hearing, and of her implicit acknowledgment at the hearing that plaintiff could not testify even about her work history and medical condition without assistance, the ALJ should have given at least some consideration to Dr. Rahtz's findings of diminished mental ability.

Because the ALJ made only passing reference to Dr. Rahtz's findings of mental impairment, and did not explicitly mention Rahtz's findings in her assessment of the severity of plaintiff's impairments, the Court must assume that the ALJ gave no significant consideration to that portion of Rahtz's report. The Court concludes, however, that Dr. Rahtz's findings merited some serious consideration in light of other evidence in the record of plaintiff's mental impairments. On remand, therefore, the Secretary shall explicitly consider Dr. Rahtz's findings together with other evidence in the record of plaintiff's intellectual impairment.

### 3. Psychiatric Impairment

In summarizing the report of Dr. Strassberg, one of the consultative physicians who had examined plaintiff, the ALJ mentioned in passing Dr. Strassberg's observation that plaintiff had a history of psychiatric problems. (Tr. 15; *see also* Tr. 203) The ALJ made no further mention of plaintiff's psychiatric condition in the text of her decision and, specifically, did not include plaintiff's psychiatric condition among the impairments she assessed after having "reviewed all of the evidence in the file." (Tr. 16) There was additional evidence of plaintiff's psychiatric problems in the record before the ALJ, however. Among the medical records the ALJ obtained shortly after the administrative hearing was the report of Dr. Molly Niv, plaintiff's treating psychiatrist. In that report, Dr. Niv stated that plaintiff suffered from "obsessional

neurosis," that she was "prone to violence," that her ability to relate to others was "poor," and that her ability to work was "questionable." Moreover, Dr. Niv observed that because of the nature of her disorder, plaintiff's progress had been "very slow." (Tr. 237)

The ALJ's glaring omission of Dr. Niv's report from her consideration of plaintiff's disability claim in itself warrants reversal of the Secretary's decision. As the Second Circuit Court of Appeals has observed, "[t]he cases in this circuit are almost legion where the court has reversed administrative findings due to the factfinder's failure to give appropriate weight to the expert opinion of the treating physician." *DeLeon v. Heckler, supra,* 734 F.2d at 937. The rule of this circuit, by now, is clear: the Secretary *must* accept the expert opinion of a claimant's treating physician unless it is contradicted by substantial evidence. *Bluvband v. Heckler, supra,* 730 F.2d at 892–93; *Donato v. Secretary of HHS,* 721 F.2d 414, 419 (2d Cir.1983); *Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983).

In *DeLeon, supra,* the circuit court reversed the Secretary's determination that the plaintiff was no longer eligible for disability benefits in part because the ALJ had, without justification, given insufficient weight to the opinion of the plaintiff's treating psychologist. *See* 734 F.2d at 937–38. In the instant case, the Secretary's error is more eggregious, for the ALJ's decision makes *no* mention of Dr. Niv's report, and therefore this Court must conclude that the Secretary gave *no* weight whatsoever to the medical opinion of plaintiff's treating psychiatrist.

In the absence of any contradictory medical evidence as to plaintiff's psychiatric condition, the ALJ's failure to give any consideration to the report of a treating psychiatrist mandates reversal of the Secretary's decision. On remand, the Secretary shall consider the report of Dr. Niv, together with other evidence in the record of plaintiff's psychiatric impairment(s), in reexamining plaintiff's claim for disability benefits.

### *Failure to Provide Adequate Hearing and Develop the Record*

Finally, it is necessary to remand the instant case because this Court's review of the record reveals that the Secretary did not provide plaintiff with an adequate hearing and, in fact, failed in several respects to develop a full administrative record. It is well established in the Second Circuit that a claimant for disability benefits is entitled to "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." *Lopez v. Secretary of HHS,* 728 F.2d 148, 149 (2d Cir.1984); *Hankerson v. Harris, supra,* 636 F.2d at 895. Although the Secretary is not obligated to furnish a benefits claimant with counsel, the ALJ has a special duty to protect the rights of a *pro se* claimant. *See Lopez v. Secretary of HHS, supra,* 728 F.2d at 149; *Echevarria v. Secretary of HHS,* 685 F.2d 751, 755 (2d Cir.1982). Because hearings on disability claims are not adversary proceedings, the ALJ is under the general duty to affirmatively develop the record and to ensure that all the necessary and relevant information is produced. *Echevarria v. Secretary of HHS, supra,* 685 F.2d at 755; *Schauer v. Schweiker, supra,* 675 F.2d at 57. Where, as here, the claimant is unassisted by counsel at the administrative hearing, " 'a duty devolves on the hearing examiner to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts....' " *Mimms v. Heckler, supra,* slip op. at 637 (quoting *Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir.1972) ). *See also Echevarria v. Secretary of HHS, supra,* 685 F.2d at 755; *Hankerson v. Harris, supra,* 636 F.2d at 895. Failure to satisfy this duty may leave gaps in the administrative record that demonstrate that the claimant did not have a fair and adequate hearing before the Secretary. *See e.g., Mimms v. Heckler, supra,* slip op. at 637; *Lopez v. Secretary of HHS, supra,* 728 F.2d at 150–51; *Hankerson v. Harris, supra,* 636 F.2d at 895–96.

In the instant case, plaintiff's Legal Aid attorney did not appear at the hearing scheduled for November 4, 1982 because of an ongoing labor dispute. When the ALJ refused to adjourn the hearing to permit plaintiff to obtain new counsel, plaintiff was left with no choice but to proceed *pro se*. Plaintiff accurately characterizes the option presented to her by the ALJ—to proceed with the hearing as scheduled or to have her case dismissed—as a "Hobson's choice." Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings at 12. Indeed, plaintiff was given no real choice at all. Neither the Act nor SSA regulations required the ALJ to adjourn the hearing date at plaintiff's request. *See* 42 U.S.C. § 405(b); 20 C.F.R. § 404.936. Nevertheless, the ALJ was free to grant an adjournment *sua sponte* or upon a showing of "good cause." 20 C.F.R. § 404.936. This Court expresses no opinion as to whether the Legal Aid strike established "good cause" to adjourn the administrative hearing within the meaning of 20 C.F.R. § 404.936. However, the Court does reject the Secretary's suggestion that plaintiff's "decision" to go through with the disability hearing without benefit of counsel constituted a free and intelligent waiver of her right to have an attorney present. *See* Memorandum in Support of Defendant's Motion for Judgment on the Pleadings at 21–23.

The Legal Aid strike that precluded plaintiff's Legal Aid attorney from appearing at the disability hearing on November 4, 1982 was plainly not an event of plaintiff's making. Moreover, the ALJ's suggestion that plaintiff should have made efforts to obtain another attorney in the week to ten days between the onset of the strike and the scheduled hearing date displays marked indifference to the limited economic resources of an indigent disability claimant. (Tr. 31) Particularly in view of plaintiff's limited education and her history of emotional as well as physical infirmities, it was unrealistic, insensitive and entirely disingenuous of the ALJ to have expected plaintiff to retain new counsel in a matter of days.

■ At no time did plaintiff express a wish to proceed with the administrative hearing *pro se*. Rather, after consulting briefly with the Legal Aid supervisor who had accompanied her to the hearing, plaintiff stated, "I've decided that I, I will need a hearing.... I want the hearing proce[e]ding." (Tr. 34) Faced with the "choice" of appearing *pro se* or suffering outright dismissal of her case, plaintiff "chose" the less drastic alternative. Her "election" to proceed with the disability hearing on her own therefore can easily be distinguished from cases in which the disability claimant was found to have freely and knowingly waived her right to the assistance of an attorney. *See, e.g., Masone v. Califano*, 482 F.Supp. 525, 528–29 (S.D.N.Y.1979) (disability claimant who appeared before ALJ without attorney was "articulate, knowledgeable and experienced" and "fully aware of his right to counsel"); *see also Scherer v. Schweiker*, 530 F.Supp. 128, 133 (S.D.N.Y.1982) (record established that claimant understood his right to counsel but decided to proceed *pro se*); *Guzman v. Califano*, 480 F.Supp. 735, 736 (S.D.N.Y.1980) (claimant specifically confirmed at time of disability hearing her readiness to proceed without counsel).

It is apparent that, by agreeing to go through with the hearing before the ALJ on November 4, 1982, plaintiff did not freely and knowingly waive her right to have an attorney present. However, under the approach followed by courts of this circuit in reviewing the denial of benefits to a disability claimant who appeared *pro se* at the administrative level, this Court must ascertain whether the ALJ nonetheless adequately protected plaintiff's rights at the administrative hearing. *See Lopez v. Secretary of HHS, supra,* 728 F.2d at 149–50; *Hankerson v. Harris, supra,* 636 F.2d at 895; *Gold v. Secretary of HEW, supra,* 463 F.2d at 43–44. The Court concludes that she did not.

By insisting that plaintiff go through with the hearing assisted only by her lay

companion, Rosemarie Youngblood, the ALJ assumed the responsibility "to scrupulously and conscientiously probe into ... all the relevant facts...." *Mimms v. Heckler, supra,* slip op. at 637. As the transcript of the hearing makes clear, however, the ALJ did not discharge her statutory obligation in all respects. The ALJ did inquire into plaintiff's educational and vocational history, and questioned plaintiff and her companion in general terms as to why plaintiff could not work. However, the ALJ failed to follow up on several of her own questions. She did not probe into the circumstances that caused plaintiff to stop working in 1981, nor did she explore what plaintiff and Youngblood meant by saying that plaintiff had a tendency to "fall out," sometimes even in her sleep. (Tr. 53) Similarly, the ALJ made no attempt to follow up on plaintiff's testimony that, in addition to her other ailments, she suffered from migraine headaches. (Tr. 55)

Particularly troubling is the extent to which the ALJ failed to develop the record with regard to evidence of plaintiff's mental impairments, although testimony elicited at the administrative hearing pointed unquestionably to them. Before the ALJ at the time of the hearing was the report of Dr. Rahtz, one of the consultative physicians who had examined plaintiff. As the Court previously noted, Dr. Rahtz had reported observing plaintiff's attention and capacity to respond to questions to be "somewhat diminished," and her insight and judgment to be "similarly impaired." *See supra* at 215–216. Plaintiff's conduct at the administrative hearing, as it is reflected in the transcript of that proceeding, starkly corroborated Dr. Rahtz's finding of diminished mental ability. Plaintiff's responses to the ALJ's questions were halting and confused. Indeed, after only a few minutes of questioning, plaintiff's companion, Youngblood, interrupted to correct plaintiff's testimony, explaining that "she don't remember right." (Tr. 44) From that point on, the ALJ directed the majority of her questions to Youngblood, bypassing plaintiff almost entirely. At the conclusion of the hearing, Youngblood assured the ALJ that she would explain to plaintiff afterwards what had transpired. (Tr. 63)

The ALJ made no comment at the time of the hearing about plaintiff's obvious disorientation and difficulty in answering even simple questions concerning her background and alleged ailments. The ALJ's written decision similarly makes no mention of plaintiff's conduct at the hearing. Moreover, in summarizing Dr. Rahtz's report, the ALJ merely noted that plaintiff had been "found to have without any clinical test below average intelligence." (Tr. 15)

Similarly, the ALJ failed to follow up on testimony at the hearing concerning plaintiff's psychiatric condition. The Legal Aid supervisor who appeared with plaintiff at the start of the administrative hearing represented to the ALJ at that time that plaintiff was suffering from a "psychiatric disability." (Tr. 33) Plaintiff herself testified at the hearing that she made weekly visits to a "psycholotry" at Metropolitan Hospital. (Tr. 46) However, when Youngblood attempted to explain to the ALJ the nature of plaintiff's weekly psychiatric consultations, the ALJ diverted the subject to plaintiff's medical treatments at Metropolitan Hospital. (Tr. 47) Similarly, the ALJ failed to follow up on plaintiff's testimony suggesting that she suffered from hallucinations. (Tr. 55–56). Indeed, with respect to plaintiff's psychiatric treatments at Metropolitan Hospital, the ALJ commented that she thought "they ought to do something about your physical body before they start worrying about your head." (Tr. 51)

On remand, the Secretary shall reconsider evidence already in the record of plaintiff's intellectual capacity and psychiatric condition, and shall take and consider such additional evidence as is necessary to assess the nature and degree of plaintiff's mental impairments. In particular, the Secretary shall consider the relevance of her subsequent disability determination

and the diagnosis of mental retardation on which it was based.[9] The Secretary may also supplement the record by considering additional psychiatric evidence, including but not limited to the affidavit of Dr. Niv filed with this Court in support of plain- tiff's motion for judgment on the plead- ings.[10] Finally, in view of the Court's as- sessment of Judge Anyel's conduct at the administrative hearing held on November 4, 1982, the Secretary is directed to assign the case on remand to another ALJ.

9. *See supra* note 2. On the basis of this later determination of disability, plaintiff argues that the Court should reverse the Secretary's deci- sion in the instant case and direct an award of benefits or, alternatively, remand for the taking of new evidence. Defendant, on her part, con- tends that the December 2, 1983 decision award- ing disability benefits to plaintiff is not a part of the administrative record before the Court in the instant action, and thus does not afford a basis upon which to reverse the Secretary's pri- or determination—the subject of the instant ap- peal—that plaintiff was not disabled.

Defendant is correct that this Court, sitting for purposes of this action as a reviewing tribunal, is substantially limited in its assessment of the Secretary's determination to the evidence that was before the ALJ and the Appeals Council at the times they rendered their respective deci- sions. *See* 42 U.S.C. § 405(g); *Rivera v. Harris, supra,* 623 F.2d at 216; *Carnevale v. Gardner,* 393 F.2d 889, 891 n. 1 (2d Cir.1968). However, this does not preclude the Court from remand- ing the case to the Secretary upon a showing of good cause for the taking of new material evi- dence. *See* 42 U.S.C. § 405(g); *Carnevale v. Gardner, supra,* 393 F.2d at 891 n. 1. Such material evidence may include " 'evidence bear- ing upon [plaintiff's] condition subsequent to the date [of eligibility]' " to the extent " 'it may disclose the severity and continuity of impair- ments existing before.' " *Eiden v. Secretary of HEW, supra,* 616 F.2d at 65 (2d Cir.1980) (quot- ing *Gold v. Secretary of HEW, supra,* 463 F.2d at 41–42). *See, e.g., Kemp v. Weinberger,* 522 F.2d 967, 969 (9th Cir.1975) (medical reports made subsequent to administrative denial of disability benefits justified remand to Secretary for con- sideration of such new evidence where reports related to degenerative arthritic condition as to which there .was already evidence in record). The Secretary herself defines mental retardation as a "lifelong condition." *See* 20 C.F.R., Part 404, Subpart P, Appendix 1 at 321. Therefore, the Secretary's determination in December of 1983 that plaintiff is disabled, based as it was upon a diagnosis of mental retardation, is evi- dence that "may disclose the severity and conti- nuity of impairments existing before." *Eiden v. Secretary of HEW, supra,* 616 F.2d at 65. As the Court already has indicated, there was evidence in the record before the ALJ in the instant case that plaintiff was suffering from some degree of mental impairment. However, the ALJ failed to inquire into plaintiff's mental capacity at the administrative hearing and, more specifically, did not arrange for a clinical evaluation of plaintiff's intellectual capabilities at that time. On remand, therefore, it is appropriate for the Secretary to consider the subsequent diagnosis of mental retardation, on which the Secretary based her later determination of disability, as such evidence may bear upon the question of plaintiff's mental condition during the earlier period at issue in the instant case.

10. As already noted, *see supra* note 9, medical evidence submitted for the first time to the district court on review of a final decision of the Secretary may justify remanding the case to the Secretary for consideration of such new evi- dence if the medical report relates to one or more impairments that existed at the time the Secretary initially rendered her decision. *See Kemp v. Weinberger, supra,* 522 F.2d at 969. In the instant case, the Secretary argues that Dr. Niv's affidavit, which is dated August 31, 1983, relates solely to plaintiff's condition after the date of the Secretary's decision of February 25, 1983, and therefore may properly be considered only upon a new application for benefits. In the affidavit, however, Dr. Niv does not limit her assessment of plaintiff's psychiatric condi- tion to any particular period of time. Rather, Dr. Niv testifies generally to a range of physical and mental impairments allegedly suffered by plaintiff, including fainting spells, migraine headaches, insomnia, paranoid fears and phobi- as, and chronic obsessive thoughts. Dr. Niv does not state explicitly that such conditions existed at the time the ALJ rendered her deci- sion in February of 1983 on plaintiff's 1981 application for disability benefits. However, most if not all of these averred impairments had been mentioned in the medical reports that were before the ALJ when she rendered her February 1983 decision. These include Dr. Niv's earlier report on plaintiff's psychiatric condition, as well as the reports of the consulta- tive physicians who also had examined plaintiff. Thus, Dr. Niv's affidavit appears addressed in large part to aspects of plaintiff's physical and mental condition that were in evidence in the administrative proceedings below. Considera- tion of the affidavit by the Secretary on remand, therefore, is entirely proper. *Cf. Simmons v. Schweiker,* 563 F.Supp. 182, 186 (D.Ariz.1983) (Appeals Council did not err in declining to consider subsequent psychiatric report that re- lated primarily to claimant's condition at time report was compiled, sometime after ALJ had rendered decision on application).

## CONCLUSION

The Secretary's determination that plaintiff was not disabled prior to February 25, 1983, is based upon an application of the so-called "severity regulation," the subject of a preliminary injunction and ongoing litigation in *Dixon v. Heckler*, a class action still pending in this Court. It is appropriate, therefore, to remand the instant case to the Secretary for reconsideration in light of the district court's decision in *Dixon*. Furthermore, remand of the case is necessary because the Secretary did not consider relevant medical evidence, did not provide plaintiff with a fair hearing below, and failed adequately to develop the administrative record.

On remand, the Secretary shall assign the case to another ALJ, who shall reconsider the application of the severity regulation to plaintiff's disability claim. Specifically, the Secretary must determine whether plaintiff is capable of returning to her former job as an assembly-line worker. Assuming she determines that plaintiff cannot return to her earlier job, the Secretary must then determine what jobs plaintiff can perform given the combined effect of her impairments, her age, and her educational and vocational background. In assessing the extent of plaintiff's impairments, the Secretary shall consider all relevant medical evidence now in the record, in particular the reports of Dr. Roger Rahtz and Dr. Molly Niv. Furthermore, the Secretary shall take and consider such additional evidence as is necessary to determine plaintiff's intellectual capacity and psychiatric condition during the period in question.

Accordingly, defendant's motion for an order remanding the case pursuant to *Dixon* is granted, plaintiff's motion for judgment on the pleadings is granted insofar as it seeks a remand, and defendant's motion for judgment on the pleadings is denied as moot. The case is remanded to the Secretary for proceedings consistent with this decision. The instant action hereby is dismissed, subject to being reopened by either party within a reasonable time following further proceedings by the Secretary.

It is so ordered.