**Maria LOPEZ, Plaintiff-Appellant,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

**No. 557, Docket 83–6247.**

United States Court of Appeals, Second Circuit.

Argued Jan. 4, 1984.

Decided Feb. 16, 1984.

Elizabeth A. Hay, Brooklyn, N.Y., Brooklyn Legal Services Corp. "A," for plaintiff-appellant.

Kiyo A. Matsumoto, Brooklyn, N.Y., Asst. U.S. Atty., E.D.N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Robert L. Begleiter, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before NEWMAN and WINTER, Circuit Judges, and MacMAHON, District Judge.*

MacMAHON, District Judge:

Maria Lopez appeals from a judgment of the United States District Court for the Eastern District of New York (Henry Bramwell, Judge), affirming the denial of her claim for Supplemental Security Income benefits under 42 U.S.C. §§ 1381 *et seq.* by the Secretary of Health and Human Services. She challenges the sufficiency of the evidence supporting the denial, the legal standards applied by the Secretary, and, in light of her lack of counsel, the fairness of the hearing afforded her. We conclude that the Administrative Law Judge ("ALJ") failed to protect the rights of this *pro se* claimant and reverse the judgment of the district court with the direction to remand the case to the ALJ for a new hearing.

Maria Lopez is 60 years old and lives in Brooklyn, N.Y. She moved to this country from Puerto Rico about 10 years ago and has not worked during that time. She has only a second grade level education, and her work experience in Puerto Rico consisted of domestic labor and picking coffee.

Appellant first applied for benefits on February 28, 1980, basing her claim on a number of health problems. She suffers from diabetes, angina pectoris, hypertension, and arthritis. Her application was denied both initially and on reconsideration. She then requested a hearing which was granted, and, on November 12, 1980, she appeared *pro se,* accompanied by a woman friend whose proffered testimony in corroboration of appellant's claim was precluded by the ALJ. Since appellant speaks very little English, she testified through an interpreter. The only other witness was Dr. Israeli Jaffe, who acted as the Secretary's medical advisor. The record before the ALJ also included four medical reports by appellant's treating physician, Dr. Francisco DeLara, another by Dr. Nathaniel Reich, a consultative physician for the New York State Department of Social Services, and still other records of two hospital visits.[1] The record also included a January 18, 1980 report from the New York City Human Resources Administration classifying Ms. Lopez as "permanently unemployable" due to angina pectoris. After considering the evidence, the ALJ concluded that appellant did not suffer from a "severe" impairment, as defined by the Social Security Act and the regulations,[2] and thus denied her claim.

We start with the well-established principle in this circuit that a claimant for disability benefits is entitled to "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 43 (2d Cir.1972). The Secretary is not obligated to furnish a claimant with counsel, but the ALJ has a special duty to protect the rights of a *pro se* claimant. *Echevarria v. Secretary of Health and Hu-*

---

* Hon. Lloyd F. MacMahon, of the United States District Court for the Southern District of New York, sitting by designation.

1. Ms. Lopez was admitted to University Hospital on September 6, 1978 for uncontrolled diabetes and released on September 25, 1978. She also went to the Kings County Hospital Emergency Room on November 5, 1980 complaining of chest pains. She was not kept for observation, however, and was sent home on the same day.

2. 42 U.S.C. § 423 (1976); 20 C.F.R. §§ 404.-1520(c) and 404.1521 (1980).

man Services, 685 F.2d 751, 755 (2d Cir. 1982); *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980); *Gold, supra,* 463 F.2d at 43. When the ALJ fails to develop the record fully, he does not fulfill this duty and the claimant is deprived of a fair hearing. *Hankerson, supra,* 636 F.2d at 895.

As we have seen, appellant was accompanied at the hearing by a woman friend who intended to testify to facts corroborating appellant's disability. The ALJ, however, made it clear that he saw no reason to listen to appellant's witness. His first reference to the prospective witness was as follows:

> ALJ: Now, you brought this young lady in with you to tell me that she helps you shop and helps you do other things. Suppose you tell me about it. I see no need to bring somebody in to corroborate your testimony. You're under oath, and I'll accept what you tell me.

App. at 32–33. Appellant then testified in response to the ALJ's questions that this woman helped her in a number of ways, including such basic daily activities as shopping, cleaning, bathing, and taking injections. She told the ALJ that the woman "helps me in everything that I cannot do for myself." App. at 35. The ALJ then determined that he would not hear appellant's witness because her testimony would be cumulative. The following dialogue occurred at that time:

> Q. If I were to call her, would she tell me anything different or more than you have.
>
> A. Yes, she can.
>
> Q. Well, I see no need at this time to, to belabor this hearing.
>
> A. Okay.
>
> Q. And I, I'll use my discretion as to whether she should be permitted—Mrs. Lopez, is she going to come in and tell me exactly what you have told me?
>
> A. Yes.
>
> Q. All right. Well, in that event, in view of the fact that there's been an offer of proof, I find it cumulative, and

I'm not going to have it before this hearing.

App. at 35.

The Secretary argues that the ALJ's rejection of the proffered testimony did not prejudice appellant because the ALJ's denial of benefits was based primarily on his finding that appellant's claims of severe pain were not credible. Accordingly, the argument runs, the additional testimony would have had no effect on the ALJ's determination because the witness could not have testified as to appellant's subjective complaints of pain. In his written opinion, however, the ALJ stated that his "observations of her at the hearing were indicative of an unreduced functional capacity." App. at 14. This is in direct conflict with his assurance upon the hearing that he would accept appellant's testimony relating to her inability to perform many basic functions. Certainly, the corroborative testimony demonstrating appellant's dependence on assistance in performing functional activities would have been valuable in assessing the credibility of appellant's testimony. Moreover, it was simply unfair to preclude the testimony of a sole corroborative witness as cumulative by assuring appellant that her testimony would be accepted, and then reject it as incredible. Furthermore, contrary to the Secretary's argument, the witness was competent to testify as to her observations of the claimant's evident pain, *see Chicago & N.W. Ry. Co. v. Green,* 164 F.2d 55, 63 (8th Cir.1947), and her hearing of the claimant's contemporaneous state of mind declarations concerning pain, *see Mabry v. Travelers Insurance Co.,* 193 F.2d 497, 498 (5th Cir.1952); Fed.R.Evid. 803(3).

The ALJ should therefore have allowed appellant's witness to testify. Appellant was unrepresented and speaks little English. The prospective witness, a young woman, apparently has regular contact with appellant, probably speaks English, and could have provided effective testimony about appellant's inability to function on a daily basis. We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which

is available to him. *See Cutler v. Weinberger,* 516 F.2d 1282, 1286 (2d Cir.1975). Although the ALJ emphasized that appellant's ailments were controlled substantially by medication, it is also clear that his decision was greatly influenced by his disbelief of appellant's testimony. Consequently, we think that the ALJ's duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," *Gold, supra,* 463 F.2d at 43, required him to hear and consider the testimony he excluded.

On remand, the ALJ should also consider the medical report of Dr. Bruce Mack, dated December 1, 1980 and submitted by appellant to the Appeals Council after the hearing.[3] The Council considered this report in refusing to review the hearing decision, but concluded that, "while indicating that [appellant] may be significantly impaired at present due to an apparent cerebral infarction, [it] does not provide any new or material evidence which would change the administrative law judge's decision." App. at 4. The Council, therefore, had no reason to submit the report to the ALJ. This report, to the extent that it is evidence of an impairment or impairments which existed prior to the hearing, should be considered by the ALJ on remand, especially in light of the Appeals Council's acknowledgment that it suggests significant impairment. *See Carnevale v. Gardner,* 393 F.2d 889, 890 (2d Cir.1968). The record indicates that the symptoms expressed by appellant to Dr. Mack are similar to symptoms she had expressed on previous occasions. App. at 31 and 188. The ALJ should consider this report if he determines that it is indicative of a previously existing condition.

The judgment of the district court is therefore reversed and remanded to the district court with directions to remand the case to the ALJ for a new hearing to be conducted in accordance with this opinion.

---

3. In that report, Dr. Mack indicated that appellant's complaints of numbness and pain in the left side of her body and difficulty in seeing to the left suggested the possibility of cerebral infarction and radiculopathy. It is not clear whether these conditions existed prior to the hearing, but the ALJ should consider that possibility.