Toby CAMERON, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

No. 86 Civ. 4702 (RLC).

United States District Court, S.D. New York.

Dec. 4, 1987.

---

Toby Cameron, pro se.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Mark S. Sochaczewsky, Sp. Asst. U.S. Atty., Annette H. Blum, Chief Counsel—Region II, David Whitney, Asst. Regional Counsel, Office of the General Counsel, Dept. of Health and Human Services, of counsel), for defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Toby Cameron seeks review in this court, pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) & 1383(c)(3), of a final determination of the Secretary of Health and Human Services ("the Secretary") which denied Cameron's applications for disability insurance benefits and Supplemental Security Income ("SSI"). Because the Secretary failed to develop a sufficient record on the issue of plaintiff's disability, this case must be remanded for renewed proceedings.

## BACKGROUND

Plaintiff is a 42–year–old man with a high school education. For thirteen years, he was employed in an electronics warehouse. Administrative Record ("Adm. Rec.") at 21. His job entailed lifting and other unskilled labor. *Id.* at 21–22. In November of 1983 plaintiff was fired as a result of his excessive absences from work.[1] *Id.* at 23.

At a hearing held on November 20, 1985, before an Administrative Law Judge ("ALJ") of the Social Security Administration, plaintiff appeared *pro se*, having attempted without success to obtain Legal Services representation. Adm.Rec. at 16. Plaintiff waived his right to counsel after the ALJ explained to him that

> if you decide to go on with this hearing without counsel, then I will take on some additional duties including assisting you in establishing as complete a record as possible.... If it turns out that there are additional documents that should be a part of this record, such as doctor's records or hospital records, then I will take steps to assist you in acquiring this additional documentation. If necessary, I will take steps to acquire such additional documentation.
>
> If that is the case, we will leave the record open at the conclusion of the hearing....

Adm.Rec. at 18. Plaintiff was the only witness to testify at the hearing, the transcript of which runs to fewer than twenty pages. At the close of plaintiff's testimo-

---

1. The Administrative Law Judge's decision incorrectly states that plaintiff "testified at the hearing that he *left* his last job...." Adm.Rec. at 10 (emphasis added).

ny, the record was not held open, nor was it supplemented with additional documentation.

At the November 20 hearing, plaintiff testified that he became short of breath upon walking half a block; that he experienced chest pains daily, for which he took nitroglycerine; that he suffered from arthritis of the spine, with severe pain radiating to the hips and legs, as a result of which he used a prescription analgesic and walked with a cane; and that he was medicated for a hypertensive condition. Adm. Rec. at 23–24, 151. Plaintiff reported a bout of rheumatic fever at age seventeen, and a stab wound to the left chest in 1971 or 1972. Adm.Rec. at 10, 111.

Plaintiff testified that he had been seeing a Dr. Stanley L. Pianin for a number of years, at first every two weeks and then, since approximately August of 1985 (when plaintiff "started having this stuff real bad, this arthritis or whatever it is real bad"), once a week. Adm.Rec. at 26. The only evidence in the record that originated with Dr. Pianin is a short statement contained in a "Confirmation of Medical Data" prepared by the New York State Office of Disability Determinations. Adm.Rec. at 126. The full text of the statement, made on April 19, 1985, is set out in the margin.[2]

Between 1979 and October of 1984, plaintiff had also been treated by a Dr. Mario P. Ricci. Dr. Ricci's observations of record are limited to a one-paragraph statement,

also taken by the state Office of Disability Determinations, made on March 4, 1985.[3]

Plaintiff further testified that in August of 1985 he was seen on an emergency basis at the Joint Disease Hospital in Harlem. Adm.Rec. at 26. The record contains no documentation of the diagnoses made, or treatment given, in the course of that visit.

Plaintiff has also been treated as an outpatient at the Cardiac Clinic of North Central Bronx Hospital since February 10, 1983. The record contains plaintiff's medical chart from the clinic, but only through his June 6, 1984 visit. The ALJ did not inquire of plaintiff whether subsequent visits were made. More importantly, the ALJ solicited no expert testimony which might have assisted the court (and the ALJ) in interpreting the clinic records.

In addition, three consulting physicians' reports are of record. In the first, based on a May 1, 1985 examination of plaintiff, Dr. Anjami Bhatt lists diabetes, hypertension, rheumatic heart disease, and a history of joint pain as his findings. Adm.Rec. at 121–23. A treadmill test was performed on June 4, 1985, but had to be aborted after one minute due to extreme shortness of breath and dizziness. Adm.Rec. at 128, 133. Finally, a "Residual Functional Capacity Assessment" checklist was filled out on June 21, 1985. Despite the form's direction that "[t]he clinical basis for judgments of functional limitation or capacity MUST be identified," not a word of expla-

2. "In an update from the prior call by the New York State analyst P. Aronowitz, I have not received hospital records from North Central Bronx Hospital in order to complete the New York State Cardiology Form No. DF–234.

"When I last saw the patient in March of 1985, there was no particular complaint of anginal chest pain, however, there was mention by the patient of a history of some pain. No resting EKG was done.

"I am in possession of a January 18, 1985, cervical spine x-ray which as interpreted by the radiologist is said to show cervical spondylosis and multiple disc space degeneration. There is narrowing at the C–4, 5 and the C–6, 7 areas. My examination of January 18, 1985, does not note significant decrease in cervical spinal range of motion nor significant neurological pathology.

"I wish to re-iterate my earlier suggestion that for cardiac classification contact should be

made with North Central Bronx Hospital Cardiac Clinic and/or an independent evaluation be made." Adm.Rec. at 126.

3. The complete text of Dr. Ricci's statement reads:

"The patient has been coming here once or twice a year since 1970. He has a mitral valve murmur with which he had been working, and gives a history of rheumatic fever at age 17. He states he was attending North Central Bronx Hospital Cardiac Clinic. Beginning in December 1983 he came here and siad [sic] he could not work anymore, in his opinion, because of his heart but not because of any medical advice. He was advised to go for tests but he didn't do so. On May 30, 1984, he wanted me to sign a disability form. The last time I saw him was October 1984 at which time I told him to go for tests." Adm.Rec. at 119.

nation appears on the two-page form. Adm.Rec. at 141–42.

On January 2, 1986, the ALJ denied plaintiff's claims for benefits. The ALJ found that

[t]he medical record establishes only the existence of aortic insufficiency related to mitral valve prolapse. The medical record also demonstrates that the claimant's treating physician cannot relate the claimant's complaints to clinical findings.

Adm.Rec. at 11. The ALJ found those complaints of pain "not credible". Adm. Rec. at 12. Deciding that plaintiff possessed the residual functional capacity to engage in "sedentary work," the ALJ applied Rule 201.27 of 20 C.F.R. Part 404, Subpart P, App. 2 ("the Grid"), and concluded that plaintiff was not disabled. Adm.Rec. at 11. The ALJ's decision was adopted by the Secretary when the Appeals Council denied plaintiff's request for review. Adm.Rec. at 3.

## DISCUSSION

On review of the Secretary's determination, the court is bound to respect factual findings that are supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court must, however, "be satisfied that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir.1980) (quoting *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 43 (2d Cir.1972)). The Act, as amended, imposes on the Secretary the duty to "develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. § 423(d)(5)(B); *see Georgevitch v. Bowen*, 650 F.Supp. 635, 641 & n. 10 (N.D.Ill.1986). The Act also obliges the Secretary to "make every reasonable effort" to obtain "all medical evidence ... necessary" from the claimant's treating physicians. 42 U.S.C. § 423(d)(5) (B).

■ A claimant for disability benefits or SSI who is not assisted by counsel is entitled to additional consideration at the hearing level. The ALJ has a duty to protect the interests of such a claimant by " 'scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts....'" *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir.1975); *Gold, supra,* 463 F.2d at 43; *see Lopez v. Secretary of Health and Human Services,* 728 F.2d 148, 149 (2d Cir.1984). The ALJ must "emphasize the desirability of producing, and ... afford an opportunity to produce expert testimony, as to [the claimant's] medical disabilities...." *Cutler, supra,* 516 F.2d at 1286; *Essig v. Secretary of Health and Human Services,* 531 F.Supp. 55, 58 (E.D.N.Y.1981). When the ALJ fails in his duty to develop the administrative record fully, he deprives the *pro se* claimant of a fair hearing. *Lopez, supra,* 728 F.2d at 150; *Hankerson, supra,* 636 F.2d at 895, 897.

■ The state of the record before the court compels the conclusion that plaintiff was denied a full and fair hearing. The expert opinion of a claimant's treating physician "is entitled to particular weight," *Losco v. Heckler,* 604 F.Supp. 1014, 1017 (S.D.N.Y.1985) (Ward, J.); *see* S.Rep. No. 466, 98th Cong., 2d Sess. 26 (1984) (discussing new 42 U.S.C. § 423(d)(5)(B)), and "in the absence of substantial contradictory evidence, [that opinion] is binding on the Secretary." *Hankerson, supra,* 636 F.2d at 896. The ALJ's decision here rests in considerable part upon the supposition that "the treating physician cannot relate the claimant's complaints [of severe chest pain] to clinical findings." Adm.Rec. at 11. Dr. Pianin, however, in the brief statement attributed to him in the record, stressed that "for cardiac classification contact should be made with North Central Bronx Hospital Cardiac Clinic and/or an independent evaluation be made." Adm.Rec. at 126. He noted, moreover, that his request for plaintiff's hospital records from the Cardiac Clinic had not been honored. *Id.* Under the circumstances, it is entirely possible that the only reason for Dr. Pianin's alleged inability to relate plaintiff's pain to

clinical findings is that he was never given the opportunity to do so.[4] It was incumbent upon the ALJ to fill in this "gap" in the record, *Hankerson, supra,* 636 F.2d at 897 (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980)), whether by advising plaintiff to call upon Dr. Pianin to testify at the hearing or by holding the record open for a fuller statement of Dr. Pianin's assessment of plaintiff's cardiac condition.

The ALJ's consideration of plaintiff's cardiac symptoms was further flawed by his failure to follow up on, and in some instances even to address, that evidence which *is* of record. From those portions of the Cardiac Clinic records that are accessible to the lay reader, the court discerns questions as to whether plaintiff suffers from a "coronary spasm," Adm.Rec. at 98, or a "small pericardial effusion" due to a "[t]hickened pericardium". *Id.* at 102. The significance of these and other terms in the hospital records could only have been brought out by competent medical testimony on the record, testimony which is absent here.

Substantial evidence, moreover, does not support the ALJ's finding that "aortic insufficiency related to mitral valve prolapse" is plaintiff's *"only"* impairment. Adm.Rec. at 11 (emphasis added). Dr. Pianin noted "cervical spondylosis and multiple disc space degeneration," Adm.Rec. at 126, a clinical finding based on spinal x-rays and apparently consistent with plaintiff's complaints of back and hip pain. This diagnosis is contradicted nowhere in the record. Dr. Bhatt's consulting examination found diabetes, hypertension and joint pain. Adm.Rec. at 123. The Cardiac Clinic found hypertension, shortness of breath and non-exertional chest pain, Adm.Rec. at 95, 98, 99, as well as a "hypercontractile left ventricle." *Id.* at 102. It was the ALJ's duty to develop the record fully as to the severity of each of these impairments,[5] *Lopez, supra,* 728 F.2d at 150, and to consider the combined effect of all of them on plaintiff's ability to carry on "substantial gainful activity." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(G). *See Losco, supra,* 604 F.Supp. at 1019 (citing cases).

The ALJ was especially remiss in his handling of plaintiff's complaints of joint and back pain. Plaintiff testified that this pain became "real bad" three months prior to the hearing date, roughly, that is, in August of 1985. Adm.Rec. at 26. It was during this period that Dr. Pianin began seeing plaintiff every week. This period also corresponded to plaintiff's emergency visit to the Joint Disease Hospital. Yet the ALJ, though he was twice alerted to the need to follow up on plaintiff's aggravated symptoms, did not hold the record open to obtain plaintiff's medical record from the Joint Disease Hospital, and did not attempt to supplement the brief statement that Dr. Pianin had made back in *March* of 1985. Substantial evidence does not, as a matter of law, support findings based on so incomplete a record. *See Cutler, supra,* 516 F.2d at 1285.

The Secretary's decision is vacated, and this case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

---

**4.** While subjective complaints of pain are not, standing alone, sufficient to support a finding of disability, *Gallagher v. Schweiker,* 697 F.2d 82 (2d Cir.1983), such complaints must be accorded weight when they are accompanied by "evidence of an underlying medical condition and (1) ... objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) [an] objectively determined medical condition [which is] of a severity which can reasonably be expected to give rise to the alleged pain." S.Rep. No. 466, 98th Cong., 2d Sess. 24 (1984) (discussing new 42 U.S.C. § 423(d)(5)(A)). *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir.1986).

**5.** The ALJ should also have obtained a psychiatric examination of plaintiff based on plaintiff's statement that "I'm becoming increasingly depressed and feel like killing myself." Adm.Rec. at 89.