947 F.2d 941
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lorene JOHNS, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 90-2743.
 United States Court of Appeals, Fourth Circuit.
 Submitted April 2, 1991.
Decided Oct. 28, 1991.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Jerry D. Hogg, Magistrate Judge. (CA-89-833-2)
 Hazel A. Straub, Charleston, W.Va., for appellant.
 Eileen Bradley, Chief Counsel, Region III, William B. Reeser, Supervisory Assistant Regional Counsel, Gary B. Simpson, Assistant Regional Counsel, Office of the General Counsel, Department of Health and Human Services, Philadelphia, Pa.; Michael W. Carey, United States Attorney, Stephen M. Horn, Assistant United States Attorney, Charleston, W.Va., for appellee.
 S.D.W.Va.
 REVERSED AND REMANDED.
 Before MURNAGHAN, WILKINS and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Lorene Johns appeals from an order of the United States District Court for the Southern District of West Virginia affirming a denial by the Secretary of Health, Education and Welfare (the Secretary) of Johns' claim for Supplemental Security Income (SSI) and disability insurance benefits filed pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i), 423.
 
 
 2
 Johns is a sixty-year-old woman with an eighth grade education, who, from 1965 to 1986, worked as a clerk in a general store. Her duties there included the stocking of shelves which required her to lift items weighing up to fifty pounds. In 1980, and again in 1986, Johns injured her back while lifting heavy boxes, and in each case underwent substantial medical evaluation pursuant to her applications for workers' compensation. Johns did not return to work after the second injury. In 1988, Johns was hospitalized briefly after complaining of chest pains, but a later cardiac catheterization revealed that Johns' heart function was normal.
 
 
 3
 The record is replete with medical evidence from treating physicians, examining physicians who treated Johns only as to her back injuries, and non-examining physicians who made disability determinations after a review of the findings of the examining physicians. The treating physicians, Drs. Robert Fleer and Dr. David Smith,[1] were of the opinion that Johns suffered from acute osteoarthritis and coronary artery disease. Fleer was also of the opinion that Johns suffered from chronic lung disease. Both physicians believed that Johns was totally disabled. Both of the treating physicians' opinions were supported by one or more x-rays or CAT scans.
 
 
 4
 The physician who examined Johns pursuant to her claims for workers' compensation, Dr. A.E. Landis, was of the opinion by May of 1987, after having examined Johns on three occasions, that
 
 
 5
 Johns sustained a strain/sprain type of injury to her low back superimposed on pre-existing degenerative changes. She has already received 3% permanent partial disability award for prior back injury. This current injury obviously aggravated her pre-existing condition. It is my opinion that she has reached maximum degree of medical improvement. It is unlikely that she will return to any type of work that requires bending and lifting, but, she is in no way totally disabled.
 
 
 6
 Residual functional capacity assessments made by two nonexamining agency physicians, Dr. A.R. Gomez and Dr. J.K. Eznor, concluded that Johns could still lift twenty-five pounds and could sit, walk, or stand for six hours out of an eight-hour workday.
 
 
 7
 Johns filed an application for SSI on September 22, 1987, and for disability insurance benefits on January 5, 1988. The claims were denied at both the initial and reconsideration levels of determination. Johns then appeared before an administrative law judge after requesting a hearing on the denials. Johns appeared pro se and testified on her own behalf. The administrative law judge also heard testimony from a vocational expert and had before him the substantial medical evidence discussed above. After a thirty-minute hearing, the administrative law judge found that Johns could perform her past work as a clerk in a general store and could perform light and sedentary clerk jobs identified by the vocational expert. When the Social Security Administration's Appeals Council subsequently denied discretionary review, Johns filed suit in district court. The case was referred to a United States Magistrate pursuant to 28 U.S.C. § 636(c), who, upon consideration of the parties' cross-motions for summary judgment, entered judgment in favor of the Secretary. Johns has appealed.
 
 
 8
 A review of the record reveals that there is no merit to Johns' claim that the record does not contain substantial evidence in support of the findings of the administrative law judge; see Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990); 42 U.S.C. § 405(g). That does not end the matter, however, because we must turn our attention to Johns' contention that the decision of the administrative law judge not to hear testimony from Johns' sister-in-law, in the absence of counsel, deprived Johns of a fair hearing.
 
 
 9
 It is well-settled that in SSI and disability benefits hearings, the administrative law judge has a "duty 'scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts' in [a] case involving an unrepresented, poorly-educated pro se claimant." Walker v. Harris, 642 F.2d 712, 714 (4th Cir.1981) (citation omitted); accord Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.1981); Cruz v. Schweiker, 645 F.2d 812, 813 (9th Cir.1981).
 
 
 10
 The secretary seems to be of the opinion that those authorities stand for the proposition that unfairness in the absence of counsel can only be demonstrated through a showing that a claimant, testifying on his or her own behalf, is unable sufficiently to communicate because of some language barrier or mental condition, and the administrative law judge does little to ensure that the claimant's testimony is adequately elicited and developed. Indeed, the Secretary argues, "There is no suggestion in the record that Johns had difficulty communicating with people or that she had low intelligence." The Secretary almost seems to be suggesting that only such people require assistance of counsel at SSI and disability benefit hearings.
 
 
 11
 The authorities cannot be read so narrowly. Indeed, the instant facts are so close to those found in Lopez v. Secretary of Dept. of Health and Human Servs., 728 F.2d 148 (2d Cir.1984), that we have little difficulty concluding that Johns was denied a fair hearing on the basis of exclusion of testimony, exclusion which could have been rectified had counsel been present.
 
 
 12
 In Lopez, the Second Circuit held that an administrative law judge had improperly declined to hear testimony from the friend of the claimant on the grounds that such testimony would be merely cumulative, when the administrative law judge told the claimant that he would accept her testimony, only to reject it later as incredible. At the hearing before the administrative law judge in the instant case, the following colloquy took place:
 
 
 13
 Q. Do you have any other evidence you wish to offer, or any testimony from other people--
 
 
 14
 A. Well--
 
 
 15
 Q. --or anything we've not covered?
 
 
 16
 A. Not unless you want to ask her [Johns' sister-in-law] something that would--she could verify for me that I'm a very truthful person. I said, I may starve to death tomorrow, but I won't come and sit here and lie to you that I can do this, or I can do that, but if I was able to work, I'd be out there after it, but I have come to the place that I can't, and I know I can't, and I do need some help from somebody.
 
 
 17
 Q. Well, I believe you'll (INAUDIBLE) considerable amount of arthritis, plus you brought in evidence today of a heart condition.
 
 
 18
 A. Yes, sir.
 
 
 19
 Q. So, I'm not questioning your testimony.
 
 
 20
 A. Well, I know you're not, but I mean, I know you--I mean, know you sincerely hear a lot of peoples [sic] testimony, maybe some's true and some's not true, I don't know, but I'm not the type of person that will come and sit, and say that I can't, because when I tell you I can't, sir, I can't.
 
 
 21
 Q. But you're [sic] choice is to whether you call other witnesses. I don't know what they would know, or what they would have to say--
 
 
 22
 A. Well--
 
 
 23
 Q. --or whether there's anything new they could add that we haven't covered.
 
 
 24
 A. Like I said, she's my sister-in-law, and if you think you need to ask her questions, fine, to verify anything that I have told you--
 
 
 25
 Q. No, I don't believe I need to.
 
 
 26
 A. --but if you don't need to, then that's fine.
 
 
 27
 (Emphasis added.) Referring to the exchange above, the Secretary argues that
 
 
 28
 [t]he Administrative Law Judge allowed Johns to call whatever witnesses she chose at the hearing. He informed her that it was her choice whether to call other witnesses and pointed out that he did not know in advance what other witnesses would say. In this context, Johns choose [sic] not to have her sister-in-law testify. Additional collaborative testimony by a lay witness would not have changed the outcome of the hearing decision.
 
 
 29
 We find such an assertion unpersuasive, particularly in light of the following observation made by the court in Lopez:
 
 
 30
 The Secretary argues that the ALJ's rejection of the proffered testimony did not prejudice appellant because the ALJ's denial of benefits was based primarily on his finding that appellant's claims of severe pain were not credible. Accordingly, the argument runs, the additional testimony would have had no effect on the ALJ's determination because the witness could not have testified as to appellant's subjective complaints of pain. In his written opinion, however, the ALJ stated that his "observations of her at the hearing were indicative of an unreduced functional capacity." This is in direct conflict with his assurance upon the hearing that he would accept appellant's testimony relating to her inability to perform many basic functions. Certainly, the corroborative testimony demonstrating appellant's dependence on assistance in performing functional activities would have been valuable in assessing the credibility of appellant's testimony. Moreover, it was simply unfair to preclude the testimony of a sole corroborative witness as cumulative by assuring appellant that her testimony would be accepted, and then reject it as incredible.
 
 
 31
 Id. at 150 (citation omitted). It seems to us that the administrative law judge below committed precisely the same error by first assuring Johns that he did not question her testimony, and later rejecting it in his written findings as incredible.[2] Finding such an error to have deprived Johns of a fair hearing, we reverse and remand to the district court with instructions to remand to the Secretary for a new hearing consistent with this opinion.[3]
 
 
 32
 REVERSED AND REMANDED.
 
 
 
 [1]
 Johns first approached Smith for a second opinion as to her second workrelated injury
 
 
 [2]
 While our discussion here does not reach the merits of Johns' claim, we are nonetheless troubled by the seeming willingness of the administrative law judge to equate the disability complained of for purposes of social security disability benefits with the disability complained of for purposes of workers' compensation benefits. While evidence in the record exists to show that Johns suffered from severe symptomatic osteoarthritis, a condition existing independent of the back injuries she suffered and for which she received some amount of workers' compensation; see findings of Dr. Smith (T-236,37); the administrative law judge chose to make credibility determinations in favor of medical experts who treated and examined Johns only with regard to her lower back injuries. Such findings would tend to exacerbate the unfairness of the colloquy alluded to above, in light of the fact that the administrative law judge specifically referred there to Johns' "considerable amount of arthritis," testimony which he assured Johns he was "not questioning."
 
 
 [3]
 The basis of our remand is limited to the questioning of other witnesses appearing on Johns' behalf, whose testimony would bear directly on the relationship between Johns' subjective assessment of her pain and the objective assessment of the underlying disorder causing such pain. See Hyatt v. Sullivan, 899 F.2d 329 (4th Cir.1990). We thus reserve the question of whether the administrative law judge improperly assessed Johns' subjective pain as incredible
 As to the other issues raised by Johns concerning misapplication of the grid contained in 20 C.F.R. 404.1501-1539, Appendix 2 and improper questioning of the vocational expert, we find those claims to be without merit.