**Blossom SUTHERLAND, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CV–02–5853(NGG).**

United States District Court, E.D. New York.

June 23, 2004.

Charles E. Binder, Binder and Binder, New York City, for Plaintiff.

Kathleen Anne Mahoney, Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

GARAUFIS, District Judge.

Blossom Sutherland ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to challenge a determination of Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), denying review of Administrative Law Judge ("ALJ") Kenneth Levin's denial of Social Security disability benefits. Before the court are cross motions for judgment on the pleadings. For the reasons below, Commissioner's motion is denied, the plaintiff's motion is granted, and the case is remanded for the Commissioner to address the issues set forth below.

## I. BACKGROUND

### A. Procedural History

The plaintiff filed an application for disability benefits on November 25, 1997, alleging that she became disabled as of May 15, 1995. Transcript of Record ("Tr.") at 156. Her application was denied both initially and upon request for reconsideration. Tr. at 139, 143, 145. On March 9, 1999, the plaintiff requested a hearing before an ALJ, Tr. at 148. On July 27, 1999 her request for a hearing was granted. Tr. at 149. The hearing was held on December 6, 1999 in New York, NY, before ALJ Kenneth Levin. Tr. at 47–136. At the hearing, the plaintiff testified, Tr. at 4–100, a medical expert testified, Tr. at 100–26, and a vocational expert testified. Tr. at 126–36. After the hearing, the ALJ determined that the plaintiff was not entitled to disability insurance benefits under the Social Security Act. Tr. at 36. On September 6, 1999, the Appeals Board denied the plaintiff's request to review the ALJ's decision. Tr. at 5. The plaintiff timely commenced this action seeking review of the decision of the Social Security Administration denying her disability benefits.

### B. Plaintiff's History

The plaintiff was born in Jamaica on June 15, 1950. Tr. at 156. She has a high school education, as well as approximately two years towards a city college degree in management. Tr. at 93. From 1971 until May 1995, she held a job as a vault clerk at a bank, which required her to lift and carry objects of thirty pounds, and to push and pull objects of over fifty pounds. Tr. at 53–57. From 1991 until 1999, the plaintiff underwent countless medical tests and examinations. Throughout this period, the plaintiff made regular visits and consultations with Dr. Leo Parnes, her treating

physician. *See* Tr. at 322–45, 492–99, 569–603, 617–52.[1]

In May 1991, the plaintiff sustained injuries as a result of an accident at work, in which several boxes fell and struck her. Tr. at 61–62. As a result of this accident, the plaintiff underwent extensive medical testing and treatment for pain and injuries between 1991 and 1995. Although testing revealed that she might have sustained a mild concussion or post-concussion syndrome after the accident, Tr. at 429, 223–24, most testing revealed little evidence of severe medical injury. *See* Tr. at 218–20, 231–41, 407–38, 482–83. Notably, though, in late 1994, a CT-scan revealed that the plaintiff had developed a cyst in her left maxillary sinus, as well as a mass in her right auditory canal. Tr. at 243.

On May 15, 1995, the plaintiff sustained injuries as a result of another accident at work, in which packages and staple guns fell on her. Tr. at 69–70. On May 18, 1995, Dr. Parnes diagnosed traumatic cervical sprain, lumbosacral sprain with low back pain, sciatic radiculitis on the right side, traumatic intercostal neuritis bilaterally, and traumatic contusion and sprain of the left shoulder, left wrist, and left hand. Tr. at 320. However, on May 19, 1995, x-ray testing revealed only mild changes due to degenerative disc disease, as well as posterior and anterior osteophytes at C5/C6 and C6/C7. Tr. at 609. The plaintiff, complaining of continuing pain, saw several other doctors, but no further orthopedic diagnosis was made. Tr. at 487. Neurological testing was recommended, *id.*, and on July 7, 1995, Dr. Joanna Wesley diagnosed analgesic withdrawal headaches. Tr. at 208. A few weeks later, Dr. Wesley diagnosed vascular headaches. Tr. at 209.

In October 1995, an MRI was taken of the plaintiff's brain at Brooklyn Medical Imaging Center, and an MRI of her shoulder was taken at Kings Medical Diagnostic Imaging. Tr. at 210, 321. Dr. Charles Barax's MRI of the plaintiff's brain revealed a "large abnormal soft tissue density within the left maxillary sinus, consistent with mucosal retention cyst." Tr. at 210. Dr. Barax indicated that this might "explain the patient's left sided head pain." *Id.* Dr. Byron Toyloy later indicated that this cyst was "increasing in size," and recommended surgery to remove it. Tr. at 211–13. Dr. George Braff's MRI of the plaintiff's shoulder gave the following impression: "Abnormal study. Joint Effusion. Impingement Syndrome. Partial Rotator Cuff Tear." Tr. at 321.

In 1996, the plaintiff was tested and treated by various doctors for continued complaints of headaches and pain. On January 25, 1996, Dr. Toyloy examined the plaintiff and found the plaintiff to be experiencing loss of vision in her left eye, hearing loss, and air popping in her left ear. Tr. at 214. On April 12, 1996, Dr. C.H. Huh examined the plaintiff, removed earwax from her ears, and recommended a CT-scan of her paranasal sinuses. Tr. at 352. Dr. Huh later reexamined the plaintiff and suggested she undergo an endoscopy of the sinuses. Tr. at 665–6. On April 26, 1996, Dr. Jose Hertz conducted a CT-scan of the plaintiff's paranasal sinuses, and found minimal bilateral maxillary polyposis with a super-imposed small air fluid in the left maxillary antrum, bilateral choncha bullosa deformity of the middle nasal turbinates, a mild deviation of the nasal septum, as well as an unusually prominent nasophyrangeal soft tissue. Tr. at 663. On May 2, 1996, Dr. James Badia conducted an x-ray examination, and found levoscoliosis in the cervical spine, straight-

---

1. The parties do not dispute that Dr. Parnes is the plaintiff's treating physician.

ening of the cervical curve, an anterior osteophyte at C5, and a suggestion of anterior subluxation of the left mandibular condyle. Tr. at 324–25. On August 1, 1996, Dr. Bruce Moskowitz examined the plaintiff and found that the plaintiff was not suffering any neuro-ophthamological problems, but only had a benign neuro-ophthamological condition. In April 1996, the plaintiff was in a car accident, and was admitted to Kingsbrook Jewish Medical Center, complaining of neck and back pain. Tr. at 354. She was released in stable condition. Tr. at 356. Throughout 1996, Dr. Parnes was treating the plaintiff. See. Tr. at 327, 330.

In 1997, the plaintiff visited the emergency room several times and was tested by various doctors. On February 27, 1997 the plaintiff received a consultation at Kings County Hospital Center, in which the consulting physician found no neck stiffness or mastoid tenderness, but did find that plaintiff could produce no saliva on the left side and exhibited parotid tenderness, creating a suspicion of early parotitis. Tr. at 251–53. On February 28, 1997, the plaintiff was examined by another physician at Kings County Hospital Center, in which no fractures were identified; however, a region of increased opacity in the frontal bone "consistent with a depressed fracture" was identified. Tr. at 262.

In 1998, the plaintiff was tested by various doctors. On February 3, 1998, Dr. Mohammed Khattak examined the plaintiff and found pain in the neck, left shoulder, left wrist and back, as well as hypertension. Tr. at 367. Dr. Khattak noted that the plaintiff could sit, stand, walk, bend, lift and carry, push and pull, travel and handle small objects. Tr. at 367. On March 27, 1998, the plaintiff received a lumbar spine examination at the Department of Radiology at the Kings County

Hospital Center. Tr. at 266–67. Tests were normal, except that minimal degenerative changes were again detected, as well as a large osteophyte formation at C5 and straightening of the cervical spine. Tr. at 267. On April 4, 1998, an MRI of the plaintiff's lumbar spine was taken, indicating that bone marrow signal intensity had decreased, but finding no intradural or extradural mass present. Tr. at 288. Tests suggested the possibility of a hematological disorder. Tr. at 288. On May 27, 1998, Dr. Daniel Morgan conducted an orthopedic examination of the plaintiff and found chronic cervical pain and chronic sprain of the left wrist. Tr. at 589 He ruled out radiculopathy. *Id.* On June 17, 1998, the plaintiff received examinations at the Department of Radiology at the Kings County Hospital Center. Tr. at 303–04. Tests indicated that the plaintiff's left shoulder demonstrated cystic changes in the greater tuberosity, which might have been "related to chronic rotator cuff pathology." Tr. at 303. On August 5, 1998, Dr. Myron Seidman examined the plaintiff, but found that "objective examination findings could not support" the plaintiff=s claims of physical limitations. Tr. at 373. On August 18, 1998, Dr. Harvey Barash conducted a psychiatric examination of the plaintiff and made a diagnosis, indicating that the plaintiff would benefit from psychiatric treatment. Tr. at 378. Dr. Barash noted that testing would be helpful to determine if the plaintiff suffered from an underlying organic impairment. *Id.*

In 1999, the plaintiff was tested by various doctors. On August 14, 1999, Dr. Paul Post conducted an orthopedic examination of the plaintiff as a consultant for a worker=s compensation claim. Tr. at 567–68. Dr. Post found evidence of a 40 percent "loss of use of the left upper extremity." Tr. at 568. On August 24, 1999, the plaintiff received an MRI of the lumbar spine, indicating posterior disc protrusions at

L2–L3 and L4–L5, as well as posterior disc bulging at L5–S1. Tr. at 650. On September 2, 1999, Dr. Cyrus Vosough conducted an examination of the plaintiff and found cervical, thoracic and lumbrosacral derangement, myofascial pain syndrome, and left shoulder rotator cuff tendinopathy. Tr. at 673–5.

The plaintiff was examined by state agency physicians, who assessed her ability to do work-related activity examined. Both determined that she had only minor limitations. Tr. at 383–402. At the oral hearing, the medical expert, Dr. Fishbone, testified that there were no objective findings upon which to support the plaintiff =s complaint; he could not come to a specific diagnosis. Tr. at 100–01. He noted that the diagnosis of Dr. Parnes did not explain all of the symptoms cited by the plaintiff. Tr. at 115. However, after much back-and-forth between the ALJ, the medical expert, and the plaintiff=s attorney, the medical expert was unable to cite specific support for his conclusion, and did not comment specifically on the accuracy of particular reports. Tr. at 123–24. At the oral hearing, the vocational expert, Pat Green, testified that the plaintiff could perform light-exertional, low-stress, simple and routine jobs. Tr. at 127. By considering a hypothetical person of the plaintiff=s age, education, and prior work experience, the vocational expert found four jobs that the plaintiff could perform: finger print clerk, microfilm mounter, creel clerk,[2] and tooth inspector. Tr. at 36.

Additional evidence was presented to the Appeals Council after the ALJ's decision, including evidence of treatment by Dr. Parnes, as well as evidence of a surgi-cal operation. *See* Tr. at 681,700, 702–03, 709, 731–38.

## II. DISCUSSION

### A. Standard of Review

■ A determination of disability by the Social Security Administration under 42 U.S.C. § 423 may be reviewed by a district judge pursuant to 42 U.S.C. § 405(g). The reviewing function of a district court is limited: the district court may set aside the determination of the Commissioner only if the factual findings are not supported by substantial evidence, or if the determination itself is based on legal error. 42 U.S.C. § 405(g); *see Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000).

### B. The ALJ's Decision

When the Appeals Council denies a claimant's request for review, the decision of the ALJ stands "as the final decision of the Commissioner." Tr. at 5; 20 C.F.R. §§ 404.981, 416.1481; *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir.1996). According to Social Security Administration regulations, the ALJ must use a five-step sequential analysis to determine whether a claimant qualifies as "disabled." 20 C.F.R. § 404.1520(a)(4); *see Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir.1999). First, the ALJ determines whether the claimant is engaging in substantial gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i); 20 C.F.R. § 404.1520(b). Second, if the claimant is not, the ALJ determines whether the claimant has a severe impairment that limits her work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1520(c). Third, if such an impairment exists, the ALJ determines

---

**2.** The transcript refers to the job as a "peril" clerk. Tr. at 127. The ALJ, however, states that the vocational expert testified that the plaintiff was capable of being a creel clerk. Tr. at 36. The court assumes that this was a mistake in transcription. The courts assumes that the ALJ, who heard the testimony, was familiar with the job and properly referred to its title in his decision.

whether the impairment meets or equals the criteria of an impairment listed in Appendix 1 to 20 C.F.R. Pt. 404, Subpt. P. ("Listings of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404.1520(d). Fourth, if the impairment does not meet or equal a listed impairment, the ALJ, using the assessment of residual function capacity as described in 20 C.F.R. § 404.1520(e), determines whether the impairment prevents the claimant from doing her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404.1520(f). Fifth, if the individual cannot perform her past work, the ALJ, using the assessment of residual function capacity as described in 20 C.F.R. § 404.1520(e), determines whether her impairment prevents her from doing any other work. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1520(g). If all steps are satisfied, the ALJ finds the claimant to be disabled. In making a determination, the ALJ must consider "all evidence" in the case record. 20 C.F.R. § 404.1520(3).

In the instant decision, the ALJ decided that the plaintiff was not disabled as defined under the Social Security Act. The ALJ provided a description of the plaintiff's personal and work history, as well as a detailed discussion of the plaintiff's oral testimony and subjective complaints. Tr. at 19–24. Next, the ALJ discussed the medical evidence, beginning with the evidence from the plaintiff's treating physician, Dr. Parnes, Tr. at 24–25, and his referral tests. Tr. at 288, 650. The ALJ did not "attempt to summarize all of the various medical records" in the large accompanying file, instead selecting certain medical evidence to discuss. Tr. at 25. Specifically, the ALJ summarized the reports of the following physicians: Dr. Myron Seidman, Tr. at 373; Dr. Mohammed Khattak, Tr. at 367; Dr. Harvey Barash, Tr. at 378; Dr. Cyrus Vosough, Tr. at 673;

and the medical expert, Dr. Fishbone, Tr. at 100.

Based on the considered testimony, the ALJ weighed the evidence and conducted the five-step analysis to determine disability. The ALJ found that: (1) the plaintiff had not engaged in substantial gainful work activity since May 15, 1995, Tr. at 35; (2) the plaintiff was suffering from a severe combination of impingement syndrome and chronic internal derangement of the left shoulder, left maxillary sinusitis, probable tension headaches, and a personality disorder with histrionic features, id.; (3) the plaintiff did not have an impairment or combination of impairments listed in or equal to those in the Listings of Impairments, id.; (4) the plaintiff's residual function capacity allowed her to engage in physical exertional and non-exertional requirements of work, except for lifting or carrying more than 20 pounds occasionally and 10 pounds frequently or the equivalent, or work that involves significant concentration or an average amount of stress, and the plaintiff could not perform her previous work as a vault clerk, Tr. at 36; (5) the plaintiff, based on her residual function capacity, was able to perform at least the following four jobs: fingerprint clerk, microfilm mounter, creel clerk, and tooth inspector. Id.

In establishing these findings, the ALJ seemed to wholly discount the testimony of the plaintiff's treating physician, based on the following reasons: Dr. Parnes kept no records of his clinical findings or observations, Tr. at 32; Dr. Parnes' conclusions were contradicted by tests on August 24, 1999 and April 4, 1999, Tr. at 25; Dr. Parnes' reports were atypical and jumbled, id.; Dr. Parnes' findings were vague and almost incomprehensible, id.; Dr. Parnes' reports contradicted themselves, id.; Dr. Parnes is an osteopath with no qualifications to reach the conclusions drawn. Id.

Moreover, the ALJ discounted most of the plaintiff's subjective complaints, noting that an ALJ is only required to consider them if she has a medically determinable impairment that "could reasonably be expected to cause her complaints." Tr. at 33.

## C. The Plaintiff's Claims

### 1. Failure to Adequately Consider the Record

■ The plaintiff argues that the ALJ failed to properly consider the severity of her medical conditions at step two of the sequential analysis under 20 C.F.R § 1520.404(a). Plaintiff's Brief ("Pl.Br.") at 16. At step two, the ALJ only found that the plaintiff was suffering from a combination of impingement syndrome and chronic internal derangement of the left shoulder, left maxillary sinusitis, probable tension headaches, and a personality disorder with histrionic features. Tr. at 35. According to the plaintiff, however, there "is ample medical documentation in the record to indicate that the claimant has severe physical impairments above and beyond what the ALJ found." *Id.* First, the plaintiff points out a skull x-ray taken at Kings Country Hospital Center on February 28, 1997 (included in the transcript) which revealed evidence "consistent with a depressed fracture." Tr. at 262; Pl. Br. at 17. Although the ALJ concluded that the plaintiff had no such fracture, he does not mention this part of the transcript. Second, the plaintiff points out three separate x-rays which indicate degenerative changes and osteophyte formation in plaintiff's back and neck. Tr. at 609, 271, 267. Although the ALJ concluded that the plaintiff's spine pain could not possibly persist for the requisite period, he did not mention these parts of the transcript that provide evidence to the contrary.

■ It is not the place of the district court to weigh the credibility of complex, contradictory evidence, or reconsider anew whether the claimant is disabled. *See Schaal v. Apfel,* 134 F.3d 496, 500 (2d Cir.1998). But it is the place of the district court to ensure that the ALJ has faithfully fulfilled his legal duties. The ALJ has a legal duty to adequately develop the record. 20 C.F.R. § 404.1512(d); *Perez,* 77 F.3d at 47. This duty, however, would be meaningless if the ALJ did not actually consider the evidence contained therein. The ALJ must consider the entire record in accordance with his duty under 20 C.F.R. 404.1520(3). It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims. It is grounds for remand for the ALJ to ignore parts of the record that are probative of the claimant's disability claim. *See Lopez v. Sec'y of Dept. of Health and Human Services,* 728 F.2d 148, 150–51 (2d Cir. 1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him."); *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975) (indicating that courts may remand when evidence "was not explicitly weighed or considered by [the ALJ], although such consideration was necessary to a just determination of a claimant's application.") (internal citations omitted); *See also Carnevale v. Gardner,* 393 F.2d 889, 891 (2d Cir.1968) (remanding to ALJ when decision did not reveal whether ALJ had considered certain important evidence in the transcript).

Here, the ALJ was faced with a sizable transcript covering many years, as well as evidence of medical ailments not probative of whether the plaintiff was disabled. As the ALJ himself admitted, not all of the

evidence was discussed in the opinion, given its volume. Tr. at 25. Although the ALJ found no objective basis for the plaintiff's complaints about long-term neck and back pain, he never mentioned his weighing of numerous instances in the transcript in which there is evidence to the contrary. Factual determinations, based on the weighing of evidence, are within the ALJ's competence; however, in making these determinations, the ALJ must address the evidence on the record. Here, the ALJ's failure to mention several parts of the record which contradict his conclusion constitutes error. Therefore, the case must be remanded to the ALJ for consideration of this omitted evidence.

### 2. The Treating Physician

■ The plaintiff argues that the ALJ did not give proper weight to the plaintiff's treating physician, Dr. Parnes. Pl. Br. at 18. Under the 1991 Regulations promulgated by the Social Security Administration, the ALJ must give special weight to opinions from a claimant's treating physician. 20 C.F.R. § 404.1527(d)(2). The treating physician's opinion is given "controlling weight" when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When the opinion is not given controlling weight, the ALJ must provide good reasons for not doing so. Factors to be considered are: (1) the frequency of examination, and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6); Schaal, 134 F.3d at 503.

■ The ALJ did not adequately address the five factors required under 20 C.F.R. § 404.1527(d). First, in passing mention, he gave little weight to the length of the relationship with Dr. Parnes, particularly because of the inadequacies in Dr. Parnes' records of his own clinical findings or the plaintiff's progress. Tr. at 32. However, failure of the treating physician to include such clinical support for his findings does not mean the support does not exist. When the ALJ perceives a gap in the record concerning the findings of the treating physician, the ALJ has an affirmative duty to seek out such information. Schaal, 134 F.3d at 505 (citing Perez, 77 F.3d at 47). It is unclear from the record, however, whether these clinical findings do not exist, or simply were not procured by the ALJ.

Second, the ALJ did not consider evidence in the record that supported Dr. Parnes' opinion. There is no mention of Dr. Toyloy's findings of vision and hearing loss. Tr. at 214. There is no mention of Dr. Badia's findings, including levoscoliosis in the cervical spine and straightening in the cervical spine. Tr. at 324. There is no mention of findings at Kings County Hospital Center which suggest a depressed fracture. Tr. at 262. Moreover, no mention is made of the manner in which Dr. Vosough's findings support Dr. Parnes' findings. Tr. at 673.

Third, the ALJ did consider the consistency of the treating physician's opinion with that of the record as a whole, mentioning that "Dr. Parnes' conclusions and findings (to the extent he makes any) are contradicted by quite a few of the findings of other examiners throughout this lengthy record—including counsel's own recently-submitted consultative report." Tr. at 32. The ALJ did illustrate how evidence in the record contradicted some of Dr. Parnes' conclusions. Tr. at 25; see e.g., Tr. at 25,

650. The ALJ, however, did not provide reasons for (but simply asserted) that Dr. Parnes' findings contradict the rest of the record. It is not enough for the ALJ to simply say that Dr. Parnes' findings are inconsistent with the rest of the record. The ALJ has not adequately provided reasons which explain that inconsistency with these other parts. Without providing "good reasons," as required by 20 C.F.R. § 404.1527, the ALJ cannot be said to have fulfilled his duty.

Fourth, the ALJ considered that Dr. Parnes' has "no particular qualifications to be reaching any of the conclusions he draws." Tr. at 32. He noted that Dr. Parnes is an osteopath and not a medical doctor, with a "specialty" in "family practice." *Id.* As the regulations indicate, it is appropriate for the ALJ to consider whether Dr. Parnes has a specialty. The ALJ, however, doubts the credibility of Dr. Parnes because he is an osteopath, not because he fails to have any particular, mentioned specialty. The mere fact that Dr. Parnes is an osteopath is, in itself, an insufficient basis for discounting his findings, because "an osteopath is a treating physician." *Berry v. Sec'y of Dept. of Health and Human Services,* 1986 WL 14600, at *4 (E.D.N.Y. Dec. 11, 1986); *see also Eiden v. Sec'y of Health, Educ. and Welfare,* 616 F.2d 63, 63–64 (2d Cir.1980). Although the ALJ has discretion to question the weight of Dr. Parnes' findings based on his lack of specialty in a particular area, the overbroad manner in which the ALJ dismissed Dr. Parnes altogether, simply for being an osteopath, was error.

Fifth, the ALJ gave weight to "other relevant factors," which did not fall under any of the first four factors under 20 C.F.R. § 404.1527(d). These include the fact that Dr. Parnes' reports are atypical in format, vague, incomprehensible, internally inconsistent and "jumbled." Tr. at 32. These certainly constitute "other" factors that are relevant to determining what weight the ALJ has given the findings of Dr. Parnes. Yet, such considerations themselves, which constitute the bulk of the ALJ's evaluation of Dr. Parnes' testimony, do not make up for a failure of the ALJ to adequately address the four listed factors under 20 C.F.R. § 404.1527(d).

It makes it difficult to determine whether the ALJ is aware of the proper factors for consideration when his decision concerning Dr. Parnes lacks any clear structure or explicit mention reflecting such knowledge. A reasonable basis for doubt that the ALJ applied the correct legal standard in determining the weight to afford the treating physician can be grounds for remand. *See Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) (indicating that a "reasonable basis for doubt" that ALJ followed correct legal principles can give rise to remand). Because the ALJ did not properly consider the factors under 20 C.F.R. § 404.1527(d)(2), and it is unclear if he was attempting to apply them, the case must be remanded for consideration of those standards.

### 3. The Plaintiff's Final Claim

The plaintiff claims that the ALJ did not properly consider her subjective complaints. Pl. Br. at 21. The court orders that the case be remanded to consider issues raised by the plaintiff's first two arguments. These affect consideration of the ALJ's treatment of the plaintiff's subjective complaints. Accordingly, the court will not now consider this third argument.

### 4. A Different ALJ

The plaintiff requests that the district court remand to a new ALJ, because of ALJ Levin's "inappropriate hostility." Pl. Br. at 24. According to 20 C.F.R. § 404.940, "an administrative law judge

shall not conduct a hearing if he or she is prejudiced or partial with respect to any party...." The selection of a new ALJ on remand has been considered to be within the discretion of the Commissioner of the Social Security Administration. *Hartnett v. Apfel,* 21 F.Supp.2d 217, 222 (E.D.N.Y. 1998) (*citing Travis v. Sullivan,* 985 F.2d 919, 924 (7th Cir.1993)) ("As a general matter, courts have held that whether a case is remanded to a different ALJ is a decision for the Commissioner to make."). In *Nunez v. Barnhart,* 2002 WL 31010291, at *4 (E.D.N.Y. Sept. 9, 2002), the court adhered to this general principle by refusing to "by-pass the Commissioner, and order a remand to a new ALJ." The court noted that there was no reason to fear that the ALJ would not comply with his legal obligations on remand. *Id.*

There have been several instances, however, in which courts in this district have ordered the Commissioner to assign a case to a different ALJ on remand. First, in *Hartnett,* the court ordered remand to a new ALJ because the original ALJ had mischaracterized the record and had failed to consider the record with adequate care. *Hartnett,* 21 F.Supp.2d at 223 (Gleeson, J.). Second, in *Ocasio v. Barnhart,* 2002 WL 485691, at *10 (E.D.N.Y. Mar.28, 2002) (Johnson, J.), the court ordered remand to a new ALJ because of animosity between the ALJ and the claimant's attorney, as well as the ALJ's lack of sensitivity. Third, in *Ortiz v. Chater,* 1997 WL 50217, at *3, n. 1 (E.D.N.Y. Jan. 30, 1997) (Korman, J.), the court explained that a prior order to remand to a different ALJ "reflected my feeling that, rather than have the same ALJ review the claims a third time, a fresh look by another ALJ would be beneficial."

Moreover, the Second Circuit has remanded to a new ALJ as well. In *Kolodnay v. Schweiker,* 680 F.2d 878, 879–80 (2d Cir.1982), the court remanded to a new ALJ because the original ALJ had failed to adequately consider the medical evidence. Other circuits have also remanded to a new ALJ. *See e.g. Miles v. Chater,* 84 F.3d 1397, 1401 (11th Cir.1996) (remanding to a new ALJ because of the original ALJ's failure to support his findings with evidence reflected that "the process was compromised."); *Ventura v. Shalala,* 55 F.3d 900, 904 (3d Cir.1995) (remanding to a new ALJ because of original ALJ's offensive conduct).

■ The court agrees with the Eleventh Circuit that the impartiality of the ALJ is "integral to the integrity of the [disability review process]." *Miles,* 84 F.3d at 1401 (internal citations omitted). Accordingly, in light of 20 C.F.R. § 404.940, as well as the case law discussed above, remand to a new ALJ will be necessary in those situations which compromise that integrity. Specifically, when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate. Factors for consideration in this determination include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party.

In this case, the conduct of the ALJ warrants remand to a new ALJ. Here, the ALJ did not allow the plaintiff's attorney to fully question the medical expert at the oral hearing. The ALJ did not allow the plaintiff's attorney to question the medical expert about specific parts of the record

that would undermine his opinion of the plaintiff's treating physician. *See* Tr. at 117–24. In fact, it appeared from the record that the ALJ did not want to hear evidence that would call into doubt his own opinion of the plaintiff's treating physician. The ALJ seemed simply to take the medical expert's opinion as true, even though the plaintiff's attorney's questioning solicited evidence that the medical expert was not familiar with the plaintiff's medical records. *See* Tr. at 108, 109, 110, 124. The ALJ's hostility toward the treating physician is also manifested in his opinion, which sarcastically discusses the treating physicians' reports and qualifications. *See* Tr. at 32.

Moreover, the ALJ's opinion devotes considerable space to discussing the credibility of the plaintiff or dismissing her subjective complaints with apparent sarcasm. *See* Tr. at 20–24, 30. However, the ALJ admitted that an assessment of her credibility was not actually necessary to his decision. Tr. at 33. His unnecessary discussion seemed to be motivated by little more than personal hostility to the plaintiff. This apparent hostility to the plaintiff was coupled with the ALJ's selective consideration of evidence. Taken together, the record belies an ALJ hostile to the plaintiff, and gives rise to serious concerns about the fundamental fairness of the proceedings. Therefore, remand to a new ALJ is appropriate.

## III. Conclusion

The ALJ did not consider the entire record, nor did the ALJ provide good reasons for the weight he gave to the plaintiff's treating physician. The Commissioner's motion for judgment on the pleadings is DENIED. The plaintiff's cross-motion for judgment on the pleadings is GRANTED, and the case is REMANDED for the Commissioner to assign a new ALJ who will adequately consider all the medical evidence relevant to determining whether the claimant is disabled in accordance with 20 C.F.R. § 404.1520(3), and provide good reasons for affording a determined weight to the treating physician's findings in accordance with 20 C.F.R. § 404.1527(d).

SO ORDERED.