John **HARNISHER**, Plaintiff,

v.

Kenneth J. **APFEL**, Commissioner of the Social Security Administration,[1] Defendant.

No. 97–CV–5883 (JS).

United States District Court, E.D. New York.

Feb. 3, 1999.

1. Kenneth Apfel is substituted as a party defendant for his predecessor in office, Shirley S. Chater. *See* Fed.R.Civ.Pro. 25(d).

Jere B. Fletcher, Binder and Binder, Jericho, NY, for plaintiff.

Susan L. Riley, Assistant United States Attorney, Brooklyn, NY, for defendant.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Plaintiff John Harnisher ("Harnisher" or "plaintiff") brings this action pursuant to

42 U.S.C. § 405(g). Harnisher seeks review of the Commissioner of Social Security's final determination that he is not disabled, a decision which denied Harnisher disability insurance benefits under the Social Security Act ("the Act"). Plaintiff alleges that Administrative Law Judge Sol Wieselthier ("ALJ") failed to give proper consideration to plaintiff's treating sources and failed to support with substantial evidence his decision that plaintiff was not disabled. Pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons detailed below, the plaintiff's motion is granted, the defendant's motion is denied, and the case is remanded to the ALJ solely for the purpose of the calculation of benefits.

### BACKGROUND

#### I. Procedural History

Plaintiff applied for disability insurance benefits on October 8, 1992. R. 40–43.[2] The application was denied initially and then denied again on reconsideration. R. 44, 53–56, 58–60. After a hearing on December 1, 1993, ALJ Wieselthier determined that plaintiff was not disabled. R. 13–22, 157–93. The Appeals Council denied plaintiff's request for review. R. 4–5. Plaintiff then commenced a civil action in the United States District Court for the Eastern District of New York, which was assigned case number 94–CV–5509. Upon review of the ALJ's first decision, this Court found that it was not supported by substantial evidence in the record. Furthermore, the Court held that the ALJ had failed to give proper consideration to the evaluation of the treating physician Dr. Shebairo and the medical opinion of Dr. Sultan. This case was then remanded to the ALJ with specific instructions to evaluate the medical evidence and re-consider the plaintiff's subjective complaints of pain.

Upon remand, a hearing was held before ALJ Wieselthier on December 18, 1996.

R. 221–77. On April 23, 1997, the ALJ issued his decision that the plaintiff was not disabled because he could perform sedentary work. R. 203–13. Plaintiff requested that the Appeals Council review the ALJ's decision, but the council declined review in August 1997. R. 194–95. Plaintiff then sought review of the ALJ's second decision in this Court, by filing the present complaint.

#### II. Factual History

Harnisher is a forty-eight year old man who suffers from pain in his lower back and has an acute weakness in his right knee which leads to its instability and localized pain. Plaintiff attended school to the second year of college, in 1985, but did not complete the program. He joined the New York City Fire Department (N.Y.F.D.) in 1970 and served for almost twenty-one years, until an injury forced his retirement. R. 41, 118–119, 142.

Plaintiff was a lieutenant in charge of a truck rescue company, and suffered several injuries in the course of his work as a firefighter. R. 68, 307. As a lieutenant, Harnisher would usually direct the firefighting, which would require him to lift over fifty pounds frequently, and over one hundred pounds at any given time. His first injury was a broken kneecap in 1974 or 1975, early in his career. R. 190. In 1989, plaintiff suffered an injury to his back when he fell off a loading platform while fighting a fire. R. 165–66, 247–48. The accident put him out of work temporarily, but eventually he was able to recover and resume firefighting. However, three months after resuming his firefighting work, in September 1990, plaintiff was injured once again when searching an apartment during a fire. R. 248. A large clothes dresser and shelf fell on his back and knee. R. 248. In March 1991, the N.Y.F.D. retired him as a result of the on-the-job injuries to his right knee and back. R. 120–123, 166–67, 173–74, 234. Plaintiff

---

**2.** "R." refers to citations in the administrative record.

now claims that he is permanently disabled.

### III. Plaintiff's Medical History

Harnisher has been treated by many doctors and specialists over the years. An MRI of plaintiff's lumbar spine taken in 1989 showed a bulge at L3–L4 vertebra. R. 86. A January 1990 CAT scan of plaintiff's lumbar spine revealed several abnormalities, such as a bulging of the L4–5 vertebrae and narrowing of the central spinal canal. R. 112. In June 1991, Joseph F. Giattini, M.D.,[3] examined plaintiff on behalf of the N.Y.F.D.R. 126–27. He found that Harnisher suffered left lumbo sacral spine stiffness, difficulty bending to the right, and meralgia paresthetica. As a result of the tear of the meniscus, Dr. Giattini concluded that plaintiff was unfit for duty. R. 126–127.

After the second accident, involving the dresser, Harnisher required extensive medical care. He underwent months of physical therapy. The N.Y.F.D. referred Harnisher to Dr. Raymond Shebairo, an orthopedic surgeon. R. 248–249. Dr. Shebairo began treating Harnisher in October 1990 for lumbar radiculopathy and right knee torn meniscus. R. 134; *see also* R. 83–4, 133–35.[4] Dr. Shebairo concluded that Harnisher would require arthoscopic surgery, and that Harnisher was permanently and totally disabled, stating that "[i]n my opinion, he cannot return to the duties of a fireman or any other occupation." R. 132, 84.

In 1993, Harnisher's low back and right knee pain and disability continued and Dr. Shebairo issued a reevaluation report. He found that plaintiff's condition had wors- ened and concluded that plaintiff was disabled since his accident on September 23, 1990. R. 144. Dr. Shebairo assessed plaintiff's residual functional capacity ("RFC")[5] as follows: In an eight-hour day, his ability to sit was less than an hour, and his ability to stand/walk was limited to one hour. R. 145.

In March 1993, Dr. Mark Thomas performed a consultative examination for the Commissioner. R. 89–92. Plaintiff's gait was unremarkable, and he was able to heel walk. R. 90. Harnisher was unable to toe walk, crouch or stoop due to right knee pain. The range of motion of plaintiff's trunk was limited, and there was tenderness to touch in the lower vertebrae. X-rays showed narrowing of the L5–S1 vertebral space. R. 92. Dr. Thomas concluded that Harnisher suffered from chronic low back pain, lumbar radiculopathy, and right knee derangement. R. 91.

On November 11, 1993, Dr. Leon Sultan examined plaintiff at the request of his attorney. R. 137–39. The examination evaluated plaintiff's gait, lower back, and right knee. R. 138. Dr. Sultan's diagnosis was that plaintiff suffered low grade lumbar radiculitis and a torn medial meniscus of the right knee, and that he was prevented from working as a fireman and "any sedentary work activity." R. 138. Dr. Sultan's conclusion was that the nature of the spinal disease was such that it would restrict his daily activities and increase in intensity as he ages. R. 138–39. Dr. Sultan also reported that Harnisher resisted surgery because there was no guarantee it would improve his condition. R. 138–39. Dr. Sultan stated that Harnisher had the residual functional capacity to stand or walk only one to two hours in an eight

---

**3.** Dr. Giattini was chair of the St. Vincent's Hospital Department of Orthopedic Surgery. R. 127.

**4.** Dr. Arthur H. Weber, a spine specialist, also concluded in 1990 that the plaintiff was suffering from radiculopathy. R. 116.

**5.** Residual Functional Capacity is defined by the Social Security Administration as "a med- ical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s). RFC is the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." Social Security Regulation 83–10.

hour day, could sit for only three hours, that his capacity to bend and climb was restricted, and that he could not use his legs for pushing or pulling, or for fine manipulations. R. 149.

In September 1994, plaintiff was examined by Dr. Howard D. Balensweig. R. 290–98. The physical exam revealed mild restriction of the neck range of motion, poor grip, right shoulder stiffness and flattening of the lumbar curve. R. 292. Dr. Balensweig reviewed the 1989 MRI results and took his own x-rays of Harnisher's back and knee. R. 294. He found the same abnormalities as had the other doctors: a meralgia paresthetica and some lumbar radiculopathy. Dr. Balensweig concluded that plaintiff could not stand in one position for more than ten minutes, walk more than five blocks without pain, or sit for over fifteen minutes without shifting. R. 298. Dr. Balensweig opined that plaintiff was not fit for gainful employment. R. 298. The doctor's residual functional capacity assessment was that plaintiff could sit for only two hours, stand or walk for no more than two hours, lift up to twenty pounds only very occasionally, and occasionally carry ten pounds. R. 299. Plaintiff was unable to push or pull with his right leg. R. 299.

On February 5, 1996, Harnisher was further evaluated by Dr. Stephen Marcus, an orthopedic surgeon. R. 287–88. Dr. Marcus had been treating Harnisher for arthritis in his left shoulder. Plaintiff was not referred to Dr. Marcus by his attorney. R. 241. Dr. Marcus reviewed Harnisher's prior results and took his own x-rays. R. 287–89, 304. His physical examination revealed that plaintiff had a gait associated with trying to avoid the pain from his back and a limited range of motion of the lumbar spine, with some tenderness to the muscles surrounding the vertebra. R. 288. Dr. Marcus' opinion was that plaintiff was totally disabled. R. 289.

In August and December 1996, Dr. Marcus assessed plaintiff's RFC. R. 285–286. Dr. Marcus stated that plaintiff could sit, stand or walk no more than two hours each in an eight hour workday, could lift/carry only up to five pounds frequently and ten pounds occasionally, could never bend, only occasionally could climb and reach, and that Harnisher's legs could not push nor pull. R. 285.

Finally, Dr. Michael Katz, a member of a panel of medical experts retained by the Social Security Administration, testified at the first administrative hearing regarding Harnisher's claimed disability. R. 181. Dr. Katz claimed that plaintiff's back impairment did not meet a listing of which impairments could be considered a disability. R. 182. He also stated that Harnisher's knee "could be addressed surgically with a high percentage of positive results." R. 182. Dr. Katz also testified that Harnisher could perform light and sedentary work. R. 185. Dr. Katz further testified that plaintiff's congenital spinal canal stenosis would preclude his walking for long periods, that is, over an hour. R. 183–84. According to Dr. Katz, Harnisher's sitting ability was limited to one to one and one-half hours. R. 185. Dr. Katz did not provide a residual functional capacity assessment.

## IV. Opinion of Vocational Expert

At the second administrative hearing, vocational expert Owen Bernstein, Ph.D. testified. R. 251–68. Dr. Bernstein testified that Harnisher's fire-fighting work was heavy and unskilled, but that the light-duty clerical skills he acquired could be transferable. R. 252–53. Dr. Bernstein also testified that Harnisher could do sedentary work, and identified several jobs at the sedentary level. R. 253. As examples, Dr. Bernstein identified jobs such as security alarm work, office clerk, and telephone order clerk or solicitor. R. 257–260. Dr. Bernstein conceded, however, that if pain limited plaintiff's ability to sit for only three out of eight hours, that fact would interfere with his ability to do sedentary work. R. 265.

## V. The ALJ's Decision

The ALJ's decision that Harnisher was not disabled was based primarily on his findings that (1) Harnisher did not have any impairment meeting or equaling the medical criteria of a Listed Impairment; (2) Harnisher could sit for six hours in a standard eight-hour workday; (3) Harnisher's testimony regarding the severity of his pain and disability was not credible to the extent alleged; and (4) Harnisher could perform sedentary work. R. 212. As a result of these findings, the ALJ determined that Harnisher was not disabled. R. 212–13.

In making this determination, the ALJ gave great weight to the reports of State Agency physicians,[6] and flatly discounted the opinions of "most of the doctors who have treated or examined the claimant." R. 210. The ALJ rejected the opinions of Drs. Sultan and Balensweig because they were not treating sources, but rather were sources employed by Harnisher's attorney and thus could not be considered impartial. R. 210. The ALJ also held that "Dr. Sultan's opinion of a perminant [sic] *partial* disability overrides his allegation that the claimant could not perform sedentary work." R. 210 (emphasis in original). Without comment, the ALJ also rejected Dr. Balensweig's opinion that Harnisher could obtain relief from his pain by laying down. R. 210.

In addition to this summary dismissal of Drs. Sultan and Balensweig, the ALJ also discredited the opinions of Drs. Shebairo and Marcus. R. 210. The ALJ rejected these opinions because, in his view, they were contradicted by Harnisher's testimony that he does not take prescription drugs for the pain, and that he can walk ¾ of a mile and drive a car. R. 210. The ALJ also discredited Dr. Shebairo's 1993 RFC assessment, R. 144–46, in which Dr. Shebairo stated that Harnisher was incapable of performing sedentary work. R. 210. The ALJ noted that "the claimant ceased all ongoing treatment at that time. This suggests that this assessment was made at the behest of the claimant's attorney and not based on clinical findings. The claimant did not return to treatment (with Dr. Marcus) until 1996, when, coincidentally, his disability claim was being reevaluated." R. 210.

Moreover, while the ALJ incorporated by reference the medical findings made in the previous decision, the ALJ did not expand or elaborate on what aspect of the medical testimony supported his decision. Rather, the decision simply states that the State Agency physician reports were accepted, and gives the reasons why the physicians who actually treated Harnisher were rejected. R. 210. Finally, relying upon Dr. Bernstein's opinion, the ALJ found that the plaintiff was able to perform sedentary work. R. 210–11.

## LEGAL STANDARD

■ In determining plaintiff's appeal, the Court must consider whether the Commissioner's findings are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard. *See* 42 U.S.C. § 405(g), *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir.1998). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richard-*

---

6. The ALJ did not discuss what aspect of those reports he found compelling, nor did he cite to any clinical or laboratory findings from the State Agency physicians. R. 210. The reports of the state agency physicians appear to be limited to a Residual Physical Functional Capacity Assessment conducted on March 23, 1993. R. 45–52. The name of the physician who signed this form is illegible. R. 52. The report consists of a series of check-off boxes. Question number six on the form requests that the examiner explain how and why the evidence supports the conclusions in questions one through five. R. 46. However, this question was left entirely blank by the physician. R. 46–47. Thus, this state agency physician report does not provide any competent evidence as to Harnisher's medical condition.

*son v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

 The substantial evidence test applies both to the Commissioner's findings of facts and to the inferences and conclusions of law drawn from those facts. *Smith v. Shalala,* 856 F.Supp. 118, 121 (E.D.N.Y.1994). The Court also must "keep[ ] in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Commissioner of Social Security,* 143 F.3d 115, 118 (2d Cir.1998). In evaluating the evidence, "the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984)). Thus the Commissioner's decision is entitled to substantial deference. *See Saviano v. Chater,* 956 F.Supp. 1061, 1067 (E.D.N.Y.1997). *aff'd,* 152 F.3d 920 (2d Cir.1998) (Table).

In order to establish eligibility for disability benefits under the Act, a claimant must establish that he or she was insured under the statutory definition provided in 42 U.S.C. § 423(c) at the onset date of the disability. There is no dispute between these parties that Harnisher is insured.

 Once the insured status has been established, the claimant must prove the disability. Under the Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 423(d)(2)(A). "Physical or mental impairments" are those that result from "anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The mere presence of an impairment does not automatically qualify a claimant for disability benefits. *See Spears v. Heckler,* 625 F.Supp. 208, 210 (S.D.N.Y.1985).

The Commissioner has promulgated regulations establishing a five-step process to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (1997). First, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must consider whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. Third, if the claimant suffers such a "severe impairment," the Commissioner must consider whether, based only on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. *Balsamo,* 142 F.3d at 79–80. Fourth, if the claimant does not have a listed impairment, the Commissioner must determine whether the claimant—despite the "severe impairment"—possesses the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform his past work, the Commissioner must decide whether the claimant is capable of performing any other work. After considering these factors, if the Commissioner decides that the claimant cannot do other work, then she is considered disabled un-

der the Act. 20 C.F.R. § 404.1520(f); *See also Saviano*, 956 F.Supp. at 1067–69.

■ The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof as to the fifth step. *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.1998) (citing *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996); 20 C.F.R. §§ 404.1520, 416.920). The Commissioner must consider the complete record, including any objective medical evidence, as well as the claimant's subjective statements concerning her impairments, restrictions, daily activities and any other relevant statements. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984).

Finally, "[t]he law gives special evidentiary weight to the opinion of the treating physician." *Clark*, 143 F.3d at 118. The opinion of a treating source on the nature and severity of a claimant's impairment is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir.1993); *see* 20 C.F.R. §§ 404.1527(d), 416.927(d)(2). Unsupported opinions of a treating physician, however, are accorded less deference. *Schaal*, 134 F.3d at 503 (citing *Schisler*, 3 F.3d at 567).

■ If the opinion of the treating source as to the nature and severity of the impairment is not given controlling weight, the Commissioner applies various factors to decide how much weight to give such opinion.[7] If the ALJ uses the services of a non-examining medical advisor, the medical advisor's opinion does not outweigh that of a treating physician. 20 C.F.R. § 404.1527(f). "We consider all evidence from nonexamining physicians and psychologists to be opinion evidence." *Id.* Moreover, under the regulations, the Commissioner will

give more weight to opinions from ... treating sources [since they] bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). Furthermore, "the opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override the diagnosis of a treating physician. *Garzona v. Apfel*, No. 96–CV–6249, 1998 WL 643645, at *1 (E.D.N.Y. Sept.18, 1998).

## DISCUSSION

The only issue presented for review is whether the Commissioner's decision that Harnisher was not disabled is supported by substantial evidence on the record. *See Balsamo*, 142 F.3d at 79. Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support the ALJ's conclusion. *See Richardson*, 402 U.S. at 401, 91 S.Ct. 1420.

Perhaps the most helpful place to start this discussion is with this Court's December 7, 1995 Order, which remanded this case to the ALJ for further proceedings regarding the fifth step in the analysis. At that time, the Court instructed the ALJ to

give further consideration to the evidence pertaining to the petitioner's ability to perform sedentary work, and in so doing, should incorporate into his analysis not only the evaluation of treating physician Dr. Shebairo, but also the statement of Dr. Sultan that the petitioner is prevented from participating 'in any sedentary work activity.' The Commissioner should consider this evidence not only with respect to its direct implication upon petitioner's ability to perform work in the national economy, but

---

7. These factors include (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

also with respect to the pain that petitioner feels upon sitting for extended periods of time, and its related impact upon petitioner's ability to be gainfully employed.

Order dated December 1, 1995, at 1–2. A review of the proceedings conducted subsequent to this Order makes it clear that the ALJ failed to comply with the Order of the Court.

 First, the ALJ failed to give controlling weight to the medical opinions of plaintiff's treating physician, Dr. Raymond Shebairo. The medical opinion of a treating source is entitled to controlling weight. *Schisler*, 3 F.3d at 568. Here, the ALJ merely gave a summary of Dr. Shebairo's medical opinions, while failing to discuss or analyze the medical basis for those opinions. R. 209. Significantly, the ALJ's opinion fails to point out that (1) Harnisher was referred to Dr. Shebairo by the N.Y.F.D. in October 1990; (2) Dr. Shebairo concluded as early as December 1990—almost two years before applying for disability insurance benefits—that Harnisher was disabled; (3) Dr. Shebairo's assessment was based upon his own clinical examination, MRI's and x-rays; and (4) Dr. Shebairo's medical opinion of Harnisher's disability remained unchanged throughout the three-year period of treatment. R. 131–32.

Instead of giving Dr. Shebairo's opinions as a treating source the legal effect to which they are entitled, the ALJ rejected these opinions outright. In so doing, the ALJ stated that Dr. Shebairo's assessment "was contradicted by claim[ant]'s testimony that he uses only over the counter medication, and that he can walk ¾ of a mile and drive a car." R. 210. The Court is unaware, and the ALJ did not highlight, any regulation or legal authority for the proposition that the opinion of a treating source may be entirely disregarded on the basis of a balancing test between the treating source opinion and the testimony of the claimant. Even if outright rejection of a treating source's opinion could be premised on rejection of a claimant's testimony, the result reached by the ALJ could not be supported here. The fact that Harnisher testified that he takes over-the-counter medication for his pain, can walk ¾ of a mile, and can drive a car does not negate the medical evaluation of Dr. Shebairo.[8] The Court finds that Dr. Shebairo's opinion as a treating source was well-supported by medically acceptable clinical techniques and is not inconsistent with other substantial evidence in the record. Therefore, by failing to afford controlling weight to the opinion of Dr. Shebairo, especially after a remand in which the Court specifically instructed that such evaluation be considered, the ALJ committed legal error.

 Next, after apparently rejecting the opinion of Harnisher's treating physician, the ALJ committed a second error by failing to analyze the factors outlined in 20 C.F.R. § 404.1527(d)(2–5).[9] This section requires the Commissioner to evaluate various factors in determining how much weight to give to the opinion of a treating source whose opinion is not given controlling weight. There is nothing in the record to indicate that the ALJ considered the three-year long relationship between Dr. Shebairo and Harnisher, nor the presentation and consistency of other evidence in the record which supports Dr.

8. Moreover, the ALJ found that Harnisher's testimony relating to the severity of his pain was exaggerated because he does not take prescription drugs for the pain. R. 211. The ALJ appears to have given greater importance to the type of pain reliever that Harnisher takes, rather than considering the ultimate cause of the pain sought to be relieved. A finding that a claimant does or does not take prescription medication cannot be the legal basis upon which a grant or denial of disability insurance benefits is premised. "The ALJ's discrediting of [plaintiff's] testimony regarding his pain in the face of substantial expert medical evidence that pain existed was impermissible." *Scanlon v. Heckler*, 584 F.Supp. 791, 799 (S.D.N.Y.1984).

9. *See* n. 7, *supra*.

Shebairo's diagnosis. Nor did the ALJ appear to give any weight at all to the fact that Dr. Shebairo is a board-certified orthopedic surgeon. R. 208.

 In failing to consider other evidence consistent with Harnisher's claim of disability, the ALJ ignored the abundant evidence put forth by Drs. Sultan, Balensweig, Marcus, Giattini and Weber.[10] Additionally, in his opinion after remand, the ALJ failed to even mention the medical opinions of Dr. Mark Thomas, who performed a consultative exam on behalf of the Commissioner, and Dr. Michael Katz, who testified at the first administrative hearing. R. 89–92, 181–85. The opinions of Drs. Thomas and Katz are consistent with the findings of Dr. Shebairo and the other doctors who have examined Harnisher.[11]

The ALJ discounted the testimony of other physicians for various reasons. He discounted the opinions of Drs. Sultan and Balensweig because they were sources "utilized by the claimant's attroney [sic] and are not considered impartial." R. 210. While these two physicians were not treating sources, nevertheless the evidence submitted by them is consistent with that presented by Dr. Shebairo, as well as the other physicians. The ALJ specifically rejected Dr. Balensweig's opinion that Harnisher would have to lie down for relief. R. 210. This opinion was rejected despite the fact that Dr. Balensweig conducted a physical examination of Harnisher, ana-

lyzed past MRI results, and took his own x-rays. R. 294.

Regarding Dr. Sultan's evaluation, the ALJ rejected this opinion because "Dr. Sultan's opinion of a perminant [sic] *partial* disability overrides his allegation that the plaintiff could not perform sedentary work." R. 210 (emphasis in original). However, the ALJ failed to consider the full text of Dr. Sultan's opinion. R. 138. Dr. Sultan, after performing a physical examination of the plaintiff, noted that Harnisher

> will be left with a permanent partial lower back and right knee disability that will prevent him from resuming normal work activity as a fireman, in addition to his participation in any sedentary work activity.... The natural progression of his spinal disease is such that he will continue to experience ongoing back problems that will, with a reasonable degree of medical certainty, increase in intensity as he ages.

R. 138. The ALJ was specifically instructed to consider Dr. Sultan's complete statement in the remand Order dated December 7, 1995. He did not do so. The Court finds that Dr. Sultan's[12] opinion that Harnisher could not participate in any sedentary work activity, while not controlling, is consistent with the other substantial evidence in the record.

In sum, the Court finds that the ALJ's determination that Harnisher has only mild pain and restricted motion in the lower back and right knee to be wholly

---

10. This testimony is discussed in Part III., *supra*, and need not be repeated here.

11. Dr. Katz's opinion is also noteworthy as it relates to Harnisher's ability to work, in that he testified that plaintiff's condition—in 1993—prevented him from walking for over an hour and *sitting for over an hour and a half.* R. 183–85. This testimony is inconsistent with the ALJ's finding that Harnisher can perform sedentary work. "[T]he concept of sedentary work contemplates substantial sitting." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984) (citation omitted). Moreover, "[t]he ability to sit for prolonged periods is an essential inquiry in determining whether a

claimant has the residual functional capacity to perform sedentary work." *Koseck v. Secretary of Health & Human Serv.,* 865 F.Supp. 1000, 1013 (W.D.N.Y.1994) (citing *Ferraris,* 728 F.2d at 586–87).

12. The ALJ displayed some degree of hostility towards the report of Dr. Sultan. R. 271. Although this Court had ordered the ALJ to consider Dr. Sultan's statements, the ALJ said that he would give very little or no weight to Dr. Sultan. R. 271. After stating that he would give more weight to Dr. Shebairo than to Dr. Sultan, the ALJ stated "I don't care what the Court says in that respect." R. 272.

inconsistent with substantial evidence in the record. The Court also finds that the Commissioner's conclusion that in an eight-hour workday Harnisher could sit for up to six hours, stand or walk for two hours, and lift or carry up to ten pounds to be unsupported by substantial evidence in the record. Even Dr. Katz, the Commissioner's own consultant, testified that plaintiff could not sit more than an hour and a half and could not stand for more than an hour. The ALJ's contrary conclusion appears to have been constructed out of whole cloth. As a result, the Commissioner's finding that Harnisher was capable of performing sedentary work is not supported by substantial evidence in the record. Rather, the evidence points to the opposition conclusion.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED, the Defendant's motion is DENIED, and the Commissioner's decision is REVERSED. This case is RE-MANDED to the ALJ for the sole purpose of calculating the benefits due to the Plaintiff. *See Filocomo v. Chater,* 944 F.Supp. 165, 171 (E.D.N.Y.1996). This calculation is to be completed within thirty days of this Order.

SO ORDERED.